COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Frank
Argued at Chesapeake, Virginia


DESHAWN EUGENE McCLOUD

                                          OPINION BY
v.    Record No. 1368-00-1            JUDGE ROBERT P. FRANK
                                           APRIL 17, 2001
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                     Charles E. Poston, Judge

           Brett D. Lucas (Gabriel & Associates, P.C.,
           on briefs), for appellant.

           Marla Graff Decker, Assistant Attorney
           General (Mark L. Earley, Attorney General, on
           brief), for appellee.


     Deshawn Eugene McCloud (appellant) was convicted in a bench

trial of possession of cocaine with the intent to distribute, in

violation of Code § 18.2-248.  On appeal, he contends the trial

court erred in denying his motion to suppress evidence obtained

during a "strip search" of his person, in violation of his

statutory and Fourth Amendment rights.  Finding no error, we

affirm the conviction.

                          I.  BACKGROUND

     On October 5, 1999, Norfolk Police Officers Christopher

Hatman and T.L. Sterling were on duty in an unmarked police car

in the area of Virginia Beach Boulevard and Ballentine Boulevard

in Norfolk.  At approximately 6:15 a.m., the officers were

traveling on Virginia Beach Boulevard near its intersection with Ballentine Boulevard. The officers testified appellant ran a red light when turning right onto Virginia Beach Boulevard from Ballentine Boulevard. When appellant made the right turn, he pulled out in front of the police car, which was driven by Hatman. Appellant also was exceeding the speed limit by ten miles per hour.

The police officers followed appellant's vehicle and ran a license plate check. The check revealed that the vehicle was stolen. The officers were in an unmarked police car that did not have emergency lights, so they followed appellant's vehicle and directed marked police units to assist. Before the marked units arrived, appellant turned down a side street, parked and exited his vehicle. The officers exited their vehicle and approached appellant. After identifying themselves, the officers arrested appellant for possessing a stolen vehicle.[1]

After arresting appellant, Officer Hatman began to search appellant's person pursuant to the arrest. During the initial pat-down, he heard "crinkling material" in the area of appellant's "crotch." The officer testified that from his past experience, he knew it was common for those carrying illegal

---

[1] Once appellant was transported to the police station, the officers learned that the owner of the vehicle had reported the vehicle as stolen, "but [was] now saying he loaned it to the guy for a quantity of crack cocaine." No warrant was issued against appellant for possession of stolen property.

substances to keep contraband in their groin area or buttocks. Once the officer heard the "plastic rustling," he "pulled [appellant's] belt line back and observed the plastic baggies in the groin area." Hatman reached in "two inches" and pulled the plastic bag out of the front of appellant's underwear. Although the officer pulled back appellant's underwear in the front, he did not see appellant's genitals.

Hatman continued his search of appellant's person. In appellant's jacket pocket, he found a small plastic bag that contained "assorted [narcotics] packaging material," consistent with the packaging material used to package the cocaine retrieved from appellant's underwear. Hatman also found $140 in U.S. currency in appellant's wallet. The officers testified that no one was in the area at the time of the search of appellant's person. "[A]fter everything was over," a woman came outside and told the officers that she knew appellant.

Appellant disagreed with the officers' version of the search. He testified the police spread his body across the car with his chest on the hood and his legs apart. He maintained that his pants were hanging down to his mid-thigh. He also stated that Hatman pulled his "boxers" away from his body and looked inside his underwear using a flashlight. Appellant testified that Hatman "started feeling underneath [his] genitals," "felt something in [his] buttocks," and then pulled the plastic bag out of his buttocks. According to appellant,

during the search, people were present on the street and the

"bottom part" of his body was naked.  Appellant stated that his

pubic hair was showing and his boxers were barely covering his

"private area."

At the suppression hearing, appellant argued that the

search was a warrantless "strip search," which violated Code

§ 19.2-59.1 and the Fourth Amendment.  The trial court, in

denying the motion to suppress, stated:

> The Court will first say that it seems
> to me perfectly clear that the stop and
> arrest were perfectly appropriate.  The
> officers had information that they validated
> the dispatcher of the stolen vehicle and
> certainly gave them the probable cause to
> make the arrest and so the Court finds that
> the arrest was appropriate based on the
> information that was available to the
> officers and certainly had the right to do
> that.  And having made the arrest, certainly
> had the right to, for their own safety and
> within reasonable grounds for contraband,
> pat down the defendant in the way they did
> and to conduct reasonable search of the
> defendant.
>
> In this case, the Court finds there was
> no invasion of any bodily cavities in any
> way.  The Court finds that this was not a
> strip search.  The baggies' packaging was
> discovered on pat down and the Court accepts
> the testimony that the defendant's pants
> were pulled back in the front, that the
> officer only had to reach in a short
> distance, two inches, I think was the
> testimony, to get the top of the baggies and
> get that out.
>
> The Court finds from the evidence that
> the search itself given the valid and proper
> arrest was appropriate, and did not result
> in any -- result in any depravation of any
> constitutional rights, statutory rights of
> the defendant and, therefore, would overrule

the motion to suppress both as to arrest and as to the search that was conducted.

## II.  ANALYSIS

On appeal from a trial court's denial of a motion to suppress, we must review the evidence in the light most favorable to the Commonwealth, granting to the Commonwealth all reasonable inferences fairly deducible from it.  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  The findings of the trial court will not be disturbed unless plainly wrong or without evidence to support them.  See Mier v. Commonwealth, 12 Va. App. 827, 828, 407 S.E.2d 342, 343 (1991).  When reviewing the trial court's denial of a defendant's motion to suppress evidence, "[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error."  McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (quotation marks and citations omitted).

Debroux v. Commonwealth, 32 Va. App. 364, 370-71, 528 S.E.2d 151, 154, aff'd, 34 Va. App. 72, 537 S.E.2d 630 (2000) (en banc).

"[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1659, 134 L.Ed.2d 911 (1996)).  However, we review de novo the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case.  See Shears v. Commonwealth, 23 Va. App. 394, 398, 477

S.E.2d 309, 311 (1996); see also Ornelas, 517 U.S. at 699, 116 S. Ct. at 1659.

Hayes v. Commonwealth, 29 Va. App. 647, 652, 514 S.E.2d 357, 359 (1999).

In this case, the threshold issue is whether the police conducted a "strip search." Appellant contends the search violated Code § 19.2-59.1. We disagree. By its own terms, Code § 19.2-59.1 does not apply to felony offenses.[2] Appellant was arrested for possession of a stolen vehicle, a felony under Virginia law.

---

[2] Section 19.2-59.1(A) states:

> No person in custodial arrest for a traffic infraction, Class 3 or Class 4 misdemeanor, or a violation of a city, county, or town ordinance, which is punishable by no more than thirty days in jail shall be strip searched unless there is reasonable cause to believe on the part of a law-enforcement officer authorizing the search that the individual is concealing a weapon. All strip searches conducted under this section shall be performed by persons of the same sex as the person arrested and on premises where the search cannot be observed by persons not physically conducting the search.

In Taylor v. Commonwealth, 28 Va. App. 638, 641, 502 S.E.2d 661, 663 (1998), we held, "[T]he fact that a search violates a legislative mandate without violating the Constitution does not provide for the exclusion of such evidence." Therefore, even if we found that the officers violated Code § 19.2-59.1, the proper analysis is whether appellant's Fourth Amendment rights were violated.

Appellant relies on the definition of "strip search" contained in Code § 19.2-59.1(F)[3] to conclude that the police conducted a "strip search" of him. However, the definition applies only "[f]or purposes of this section." Therefore, it is clear from the plain language of the statute that the legislature did not intend to have the definition apply outside of the scope of Code § 19.2-59.1. Further, we conclude that the definition of "strip search" contained in Code § 19.2-59.1 is much more expansive than the traditional definition of such a search because the statute is restricted to non-jailable offenses and offenses punishable by no more than thirty days in jail. We have found no cases, nor has appellant cited any, that include "arranging" of the suspect's clothing in a definition of "strip search."

In Hughes v. Commonwealth, 31 Va. App. 447, 524 S.E.2d 155 (2000) (en banc), we said:

> A search of the person may range from a Terry-type pat-down to a generalized search of the person to the more intrusive strip search or body cavity search. "A strip search generally refers to an inspection of a naked individual, without any scrutiny of his body cavities. A visual body cavity

___

[3] Section 19.2-59.1(F) states:

> For purposes of this section, "strip search" shall mean having an arrested person remove or arrange some or all of his clothing so as to permit a visual inspection of the genitals, buttocks, anus, female breasts, or undergarments of such person.

> search extends to a visual inspection of the anal and genital areas." Commonwealth v. Thomas, 429 Mass. 403, 708 N.E.2d 669, 672 n.4 (1999). "A 'manual body cavity search' includes some degree of touching or probing of body cavities." Cookish v. Powell, 945 F.2d 441, 444-45 n.5 (1st Cir. 1991).

Id. at 455, 524 S.E.2d at 159.

Hughes was forced to disrobe and the police inspected his underwear. We characterized that activity as a "strip search."

In Moss v. Commonwealth, 30 Va. App. 219, 516 S.E.2d 246 (1999), we reversed the trial court's denial of Moss's motion to suppress, finding that the officers' discovery of crack cocaine in Moss' buttocks constituted a "strip search."

In Taylor v. Commonwealth, 28 Va. App. 638, 507 S.E.2d 661 (1998), we reversed the trial court's denial of Taylor's motion to suppress, finding Taylor was subjected to an illegal "strip search" when officers forced him to remove his clothing, including his underwear, item by item.

In Commonwealth v. Gilmore, 27 Va. App. 320, 498 S.E.2d 464 (1998), Gilmore was forced to remove all her clothing in preparation for a "strip search." The police then conducted a body cavity search. In finding Gilmore's Fourth Amendment rights were violated, we concluded that "the authority of the police under the Fourth Amendment to conduct a 'full search' of an arrestee's person without a warrant is only skin deep." Id. at 328, 498 S.E.2d at 468.

Further, in a review of a number of federal appellate decisions, we found no cases that characterize a strip search as other than partial or total disrobement.  See Amaechi v. West, 237 F.3d 356 (4th Cir. 2001); Swain v. Spinney, 117 F.3d 1 (1st Cir. 1997); Justice v. City of Peachtree City, 961 F.2d 188 (11th Cir. 1992); Masters v. Crouch, 872 F.2d 1248 (6th Cir. 1989); Weber v. Dell, 804 F.2d 796 (2nd Cir. 1986); Salinas v Breier, 695 F.2d 1073 (7th Cir. 1982).

In this case, in accepting the Commonwealth's evidence, we find appellant was not subjected to a strip search.  Unlike in Hughes, Moss, Taylor, and Gilmore, appellant's clothing was not removed, and his genital area was not exposed.  The officers made no visual inspection of appellant's genitals nor did the officers touch appellant's genitals.  Therefore, we affirm the judgment of the trial court.

Affirmed.

Benton, J., concurring.

"[I]n the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."  United States v. Robinson, 414 U.S. 218, 235 (1973).  The permissible purposes for the "search incident to a lawful arrest rests . . . on the need to disarm the suspect in order to take him into custody . . . [and] on the need to preserve evidence on his person for later use at trial." Id. at 234.  Nevertheless, the Fourth Amendment requires that we "accept as axiomatic the principle that people harbor a reasonable expectation of privacy in their 'private parts.'" Justice v. City of Peachtree City, 961 F.2d 188, 191 (11th Cir. 1992).  See also Schmerber v. California, 384 U.S. 757, 767 (1966) (holding that "[t]he overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State").

For purposes of deciding this case, I assume the Code § 19.2-59.1(F) definition of "strip search" applies.  As the United States Court of Appeals for the Fourth Circuit has recognized, "Virginia's definition of strip search . . . is similar to that of most states."  Amaechi v. West, 237 F.3d 356, 365 (4th Cir. 2001) (footnote omitted).  Although federal law determines what constitutes a strip search for Fourth Amendment purposes, "because states define strip search in a uniform

fashion, . . . state law [is] persuasive on our interpretation of what constitutes a strip search." Id. at 365 n.15 (citations omitted). The tenor of Code § 19.2-59.1 "is in accordance with federal law governing limitations on the manner and scope of strip searches"; thus, it provides a basis to determine whether a "search . . . was reasonable or fell within a questionable area of law." Id. at 365 (footnote omitted). The statute's proviso, "[f]or purposes of this section," does not alter the meaning of the term "strip search" for federal constitutional purposes.

In addition, I believe that Hughes v. Commonwealth, 31 Va. App. 447, 455, 524 S.E.2d 155, 159 (2000), does not provide a viable alternative definition of "strip search"; it seeks only to define that term by implication. The decision in Hughes concerned whether a defendant had consented to a search and did not have as its principal issue the definition of "strip search." We merely stated that the term "generally refers" to a given set of circumstances. Id. at 455, 524 S.E.2d at 159. For these reasons, I would apply the statutory definition in this case and hold that the search of McCloud did not constitute a "strip search."

Resolving the discrepancy between the officer's testimony and McCloud's testimony, the trial judge found that "the baggies' packaging was discovered on pat down . . .[,] that [McCloud's] pants were pulled back in the front, [and] that the

officer only had to reach in a short distance, two inches . . . to get the top of the baggies and get that out." We are bound by the trial judge's resolution of the conflicting testimony. Watkins v. Commonwealth, 229 Va. 469, 477, 331 S.E.2d 422, 429 (1985). Thus, the issue we must decide is whether the officer conducted a strip search when he reached between McCloud's skin and his underwear to retrieve the package of cocaine.

The officer testified that he did not disturb McCloud's clothing to make a "visual inspection of [McCloud's] genitals . . . or undergarments." He pulled McCloud's pants and undergarment away from McCloud's skin to permit the seizure of the bag that was concealed two inches from the top of those garments. He did not see McCloud's private parts and did not seek to inspect them. He merely moved McCloud's clothing a few inches to permit a sufficient space to retrieve the bag. In making this minimal intrusion, the officer did not expose McCloud's body or underwear in any manner that violated his personal privacy. I would hold, therefore, that this was a reasonable search incident to the arrest.

For these reasons, I concur in the judgment affirming the conviction.