COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Bumgardner and Humphreys
Argued at Richmond, Virginia


SHAWN EDWARD JONES

MEMORANDUM OPINION[*] BY
v.    Record No. 0152-01-2          JUDGE ROBERT J. HUMPHREYS
                                         OCTOBER 30, 2001
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
James A. Luke, Judge

Christopher B. Ackerman (James R. Traylor and
Associates, on brief), for appellant.

Eugene Murphy, Assistant Attorney General
(Randolph A. Beales, Acting Attorney General,
on brief), for appellee.


Shawn Edward Jones appeals his conviction, after a bench

trial, of possession of cocaine with intent to distribute.

Jones argues that the trial court erroneously denied his

pretrial motion to suppress evidence resulting from an unlawful

search and seizure. We disagree and affirm the decision of the

trial court.

The evidence established that on October 2, 1999 Detective

Alan Kraft, of the Hopewell Police Department, and a fellow

officer were on bicycle patrol and were observing a home at 224

South 9th Street, due to a report of activity at the home

---

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

constituting a common nuisance.  While observing the home, Kraft

saw a "Chevy Cavalier type" car drive up to the home.  He then

saw two men get out of the car and enter the residence.  After

three to five minutes, the same men left the residence, got back

in the car, and proceeded down the street.  After having

traveled about one-half of a block, the driver of the car

stopped the car in the middle of an intersection.  The car

remained stopped for approximately three to five minutes.  At

that point, the officers approached the car and initiated a

traffic stop for blocking the intersection.

Kraft approached the driver's side of the car and began a

conversation with the driver, who was later determined to be

Jones.  Kraft asked Jones for his driver's license and

registration.  However, Jones was unable to produce any

identification other than his employee identification card for

Haynesville Correctional Center.  Kraft asked him if he was

"okay."  Jones replied that he was fine, that he had just been

"fixing his radio" when he stopped.  At that point, Kraft

detected a "strong odor of alcohol[ic] beverage" about Jones'

person.  He then asked Jones to "exit the vehicle and engage in

a conversation."

After Jones got out of the car, Kraft asked him "if he had

anything that would hurt [him] in any way, anything that would

stick [him], or stab [him], or poke [him] or anything,"

intending to initiate a standard pat-down.  Jones stated, "No."

-

He then began emptying his pockets on the roof of his car. Jones put loose change, dollar bills and keys on the roof of the car. Jones also removed a pill bottle from his pocket with his right hand, but kept the bottle in his hand and continued to place items on the roof of the car. Jones then shifted the pill bottle from his right hand to his left hand. Kraft asked Jones about the bottle and Jones replied "it was his medication." Kraft immediately "grabbed [Jones'] left hand." Jones then threw the bottle across the car toward the passenger, who had also gotten out of the vehicle. The passenger, who was later identified as Jones' father, caught the bottle and threw it toward the curb of the street.

Kraft placed both men in handcuffs, and a fellow officer retrieved the bottle. The officers opened the bottle and found that it contained 2.53 grams of cocaine. Accordingly, Jones was arrested and charged with possession of cocaine with intent to distribute.

Prior to trial, Jones raised a motion to suppress the evidence arguing that Officer Kraft unlawfully seized both the pill bottle and Jones when he "put his hands on Jones' wrist." Jones also contended that the officers lacked the requisite probable cause to open the closed pill bottle without a warrant.

The trial court denied the motion, finding that the officers initiated a lawful Terry stop and that Kraft only

-

reached for Jones' hand due to Jones' own furtive movements.

The trial court also found that the officers lawfully opened the

pill bottle, holding that Jones abandoned it when he threw it

across the car.  The trial court ultimately found Jones guilty

of possession of cocaine with intent to distribute.

> "'[W]e are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.'  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1659, 134 L.Ed.2d 911 (1996)).  However, we review de novo the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case.  See Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996); see also Ornelas, 517 U.S. at 699, 116 S. Ct. at 1659."

McCloud v. Commonwealth, 35 Va. App. 276, 281, 544 S.E.2d 866,

868 (2001) (quoting Hayes v. Commonwealth, 29 Va. App. 647, 652,

514 S.E.2d 357, 359 (1999)).

Jones first argues the trial court erred in finding that

Officer Kraft lawfully seized the pill bottle and Jones when he

placed his hand on Jones' wrist.  Importantly, Jones raises no

argument as to the validity of the initial traffic stop.

A lawful traffic stop, or "'[a] Terry investigation . . .

involves a police investigation "at close range," when the

officer remains particularly vulnerable in part because a full

-

custodial arrest has not been effected, and the officer must make a "quick decision as to how to protect himself and others from possible danger."'" Servis v. Commonwealth, 6 Va. App. 507, 519, 371 S.E.2d 156, 162 (1988) (quoting Michigan v. Long, 463 U.S. 1032, 1053 (1983)). "Once an officer has lawfully stopped a suspect, he is 'authorized to take such steps as [are] reasonably necessary to protect [his and others'] personal safety and to maintain the status quo during the course of the stop.'" Id. (quoting United States v. Hensley, 469 U.S. 221, 235 (1985)).

> Although we recognize that "'police procedures [during a Terry stop] can . . . be so intrusive . . . as to trigger the full protection of the Fourth and Fourteenth Amendments,'" DePriest v. Commonwealth, 4 Va. App. 577, 586, 359 S.E.2d 540, 544 (1987) (quoting Hayes v. Florida, [470 U.S. 811, 815-16 (1985)]), cert. denied, 488 U.S. 985 (1988), there is no "'litmus-paper test for distinguishing . . . when a seizure exceeds the bounds of an investigative stop.'" Id. (quoting [Florida v.] Royer, 460 U.S. [491,] 506 [(1983)]). The Supreme Court has instructed that, in "'evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria.'" Id. (quoting United States v. Sharpe, [470 U.S. 675, 685 (1985)]). While the "investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time," the "scope of the intrusion permitted will vary [with each case]." Royer, [460 U.S. at 500].

-

Thomas v. Commonwealth, 16 Va. App. 851, 856-57, 434 S.E.2d 319, 323 (1993), aff'd en banc, 18 Va. App. 454, 444 S.E.2d 275 (1994). Indeed, we have held that "[b]rief, complete deprivations of a suspect's liberty, including handcuffing, 'do not convert a stop and frisk into an arrest so long as the methods of restraint used are reasonable to the circumstances.'" Id. at 857, 434 S.E.2d at 323 (quoting United States v. Crittendon, 883 F.2d 326, 329 (4th Cir. 1989)).

We first note that Jones voluntarily emptied his pockets, removing the pill bottle from his pocket and placing it in Officer Kraft's plain view. At no point during the incident did Kraft seize, or even physically touch, the pill bottle. Instead, Kraft merely grabbed Jones by the wrist. We find that Kraft's action in grabbing Jones' wrist did not serve to convert the valid initial encounter into a new seizure or detention. Instead, Kraft was briefly detaining and investigating an individual who had committed an obvious traffic violation, who was suspected of operating his vehicle under the influence of alcohol, and who had recently left an area under surveillance as a suspected common nuisance. Under such circumstances, Kraft's action in "maintaining the status quo" was justified and prudent, and his action of reaching for Jones' wrist, in light of the circumstances, including Jones' actions in attempting to conceal the pill bottle from Kraft's view, was not unreasonable.

-

Jones next contends that the officers lacked the requisite probable cause to open the pill bottle after he had thrown it to his father, who then threw it to the ground. However, Jones ignores the fact that these circumstances established that he effectively abandoned the item before the officers retrieved it and opened it. "It is settled, . . . that the right afforded to persons by the Fourth Amendment — to be secure against unreasonable searches and seizures of 'their' persons and property — does not extend to abandoned premises or property." Hawley v. Commonwealth, 206 Va. 479, 482, 144 S.E.2d 314, 316 (1965). "An intent to retain or abandon an expectation of privacy is determined by objective standards and 'may be inferred from words, actions and other objective facts.'" Hardy v. Commonwealth, 17 Va. App. 677, 680, 440 S.E.2d 434, 436 (1994) (quoting Commonwealth v. Holloway, 9 Va. App. 11, 18, 384 S.E.2d 99, 103 (1989)).

On these facts, we find that Jones clearly intended to abandon his expectation of privacy in the pill bottle when he threw it toward his father, who then threw it toward the curb. Thus, Jones' Fourth Amendment rights were not implicated when the officers ultimately seized the bottle from the street and opened it. Accordingly, we affirm the decision of the trial court.

Affirmed.

-