COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Annunziata and Humphreys
Argued at Richmond, Virginia


ANTONIO LAMONT KIDD

                                          OPINION BY
v.    Record No. 1887-00-2      JUDGE ROBERT J. HUMPHREYS
                                          JULY 2, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    James E. Kulp, Judge Designate

            Christine A. Cestaro, Assistant Public
            Defender (Office of the Public Defender, on
            brief), for appellant.

            Jennifer R. Franklin, Assistant Attorney
            General (Randolph A. Beales, Attorney
            General, on brief), for appellee.


     Antonio Lamont Kidd appeals his conviction, after a bench

trial, for possession of cocaine with intent to distribute, in

violation of Code § 18.2-248.  Kidd contends that the trial court

erred in refusing to grant his motion to suppress the evidence

against him, and in finding the evidence sufficient as a matter of

law to sustain the conviction.

                                  I.

     On appeal of a motion to suppress and where the sufficiency

of the evidence as a matter of law is questioned, we view the

evidence in the light most favorable to the Commonwealth, granting

to it all reasonable inferences fairly deducible from the

evidence.[1]  In addition, when we review the trial judge's refusal to suppress evidence, we consider the "evidence adduced at both the trial and the suppression hearing."[2]

So viewed, the evidence presented below established that on January 1, 2000, between 2:00 a.m. and 3:00 a.m., City of Richmond Police Officer James Hannah was patrolling an area near Mosby Court and Raven Street.  Hannah had gotten out of his patrol car and was patrolling the area on foot when he observed Kidd, standing in the shadows about 100 yards away, leaning against a wall near some apartments.  As Hannah watched Kidd, he observed one gentleman "coming in and out of an apartment" located to the right of where Kidd was standing.  The gentleman "went in and out a couple times" and "kept going up to [Kidd]."  Hannah then saw "a couple women [sic] come from around the front of the building and walk up to [Kidd]."  Hannah testified "they seemed to all have a conversation with [Kidd]. . . .  There was a hand-to-hand transaction - well, some hand-to-hand movements between one woman."  The woman then left, while the other woman stayed behind. Hannah testified that "[t]hen there was a hand-to-hand with them, then she left around the opposite side of the building. . . ." Hannah could not see the items that were being exchanged.

---

[1] See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

[2] Greene v. Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994).

Hannah subsequently radioed members of his unit, who were in a van nearby. He notified them that he had observed a man fitting Kidd's description behind the apartments on Raven Street, near the stoop, and that he had observed what he believed to have been a hand-to-hand transaction, "possibly a drug transaction."

Approximately five seconds later, Officer John Cary and another officer arrived on the scene. The officers first noticed that the ground near where Kidd was standing was "littered" with "over hundreds" of shell casings from what appeared to be "semi[-]automatic pistol fire and shotgun shells, empty shotgun shells that had been expended."[3] Cary observed Kidd standing on the stoop at the back of the apartment building. There was another man standing beside Kidd. Cary saw Kidd hand the man what "looked like a large wad of money." The man then went into the nearby apartment.

At that point, Kidd had "his right hand in his right side." He then sat down on the stoop and rolled over onto his right side, still keeping his right hand out of the officers' sight. Because

---

[3] At trial, Kidd objected to the admission of any evidence concerning the shell casings, contending "that it [was] not relevant to the issue in this case, which [was] that he did possess cocaine with intent to distribute." In this context, the trial court ordered all such evidence stricken from the record. Nevertheless, the evidence concerning the shell casings was admitted, without objection, during the initial hearing on the motion to suppress. Thus, we consider it for purposes of our review of the ruling on the motion to suppress. We do not consider it for purposes of reviewing the trial court's ruling concerning Kidd's guilt.

of the shell casings on the ground and because the officers had heard shooting in the area shortly before they approached Kidd, Cary asked to see both of Kidd's hands.  Cary testified "that [Kidd] was still fidgeting around with his right hand and then he eventually produced it."

Cary asked Kidd to stand.  Kidd, who was wearing drawstring sweatpants stood and Cary immediately observed an "abnormal protrusion" in the "front of [Kidd's] crotch area."  At that time, Cary began to pat Kidd down, patting down his crotch area first, as he suspected the item was a weapon.  Cary felt that the object had a hard edge, but did not know what it was.  He then pulled Kidd's "sweatpants back" and saw it was a change purse, with a zipper on one edge.  The purse was tied to one of the drawstrings, and Cary used the string to draw the purse out of Kidd's sweatpants.  Kidd then stated, "that's all I've got, you can check me."  In response, Cary pulled back Kidd's sweatpants once again, "grabbed the inside of [Kidd's] boxer[] [shorts] and pulled [them] out the same way [he had pulled] his sweatpants and looked inside."  He found a plastic baggie with individual baggies inside of it, just above Kidd's genital area.  Cary testified that he could see the top of Kidd's genitals when he conducted the search.

Cary removed the baggie and later determined that it contained 36 individual baggies holding a total of 2.984 grams of cocaine.  Cary found $30.00 in the change purse.

-

Prior to trial, Kidd filed a motion to suppress the evidence against him, arguing Kidd was unlawfully detained and searched, and that the officers unlawfully conducted a strip search and visual body cavity search. The trial court denied the motion.

At trial, Officer Hannah, who was qualified as an expert to testify regarding drug distribution, testified that the items found on Kidd's person were not consistent with personal drug use. Hannah based his opinion on the manner in which the cocaine was packaged. He testified that "the dosage in each one is – each individual hit would be like taking a dosage." Hannah further testified that the Raven Street area was a high-crime area, with "a lot of shootings . . . [and] a whole lot of drug activity . . . ."

At the close of the Commonwealth's evidence, Kidd once again raised a motion to suppress, arguing the same grounds as before. The trial court again denied the motion, on the basis of our holding in Hughes v. Commonwealth, 31 Va. App. 447, 458, 524 S.E.2d 155, 161 (2000), finding that Kidd voluntarily consented to a pat-down search of his underwear and that there was no body cavity search.

Finally, Kidd raised a motion to strike at the close of evidence, contending that the Commonwealth failed to establish he intended to distribute the drugs. The trial court denied the motion, finding the amount of the drugs and the packaging

-

sufficient evidence of intent, and found Kidd guilty of the charge.

## II.

On appeal, Kidd first argues the trial court erred in refusing to grant his motion to suppress on the ground that he was illegally detained. Kidd contends that he was detained at the point Officer Cary asked him to stand and show his hands.

The Fourth Amendment to the Federal Constitution provides that "[t]he right of the people to be secure in their persons, . . . and effects, against unreasonable searches and seizures, shall not be violated."[4] Thus, "[i]t is firmly established that warrantless searches and seizures are per se unreasonable, subject only to a few specifically-established and well-delineated exceptions."[5] "'[T]he Commonwealth has the burden of proving the legitimacy of a warrantless search and seizure.'"[6] Moreover, "[w]hether the Fourth Amendment has been violated '"is a question of fact to be determined from all the circumstances."'"[7]

---

[4] U.S. Const. amend. IV.

[5] Reittinger v. Commonwealth, 260 Va. 232, 235, 532 S.E.2d 25, 27 (2000).

[6] Id. at 235-36, 532 S.E.2d at 27 (quoting Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989)).

[7] Id. (quoting Ohio v. Robinette, 519 U.S. 33, 40 (1996) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973))).

The Commonwealth concedes that the initial encounter between Kidd and Officer Cary was "non-consensual."  Therefore, "[i]n order to justify [the] seizure, [Officer Cary] must have [had] a 'reasonable and articulable suspicion of criminal activity on the part of the defendant.'"[8]  In justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.[9]  To establish this, "[a] general suspicion of some criminal activity is enough, as long as the officer can, based on the circumstances before him at the time, articulate a reasonable basis for his suspicion."[10]  Moreover, "[w]hen determining if reasonable suspicion exists, courts must consider that '[t]rained and experienced police officers . . . may be able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer.'"[11]

Here, it is clear that Officer Cary had sufficient reasonable suspicion that criminal activity was afoot to support

---

[8] Hatcher v. Commonwealth, 14 Va. App. 487, 490, 419 S.E.2d 256, 258 (1992) (quoting Commonwealth v. Holloway, 9 Va. App. 11, 15, 384 S.E.2d 99, 101 (1989)).

[9] Id.

[10] Id.

[11] Buck v. Commonwealth, 20 Va. App. 298, 302-03, 456 S.E.2d 534, 536 (1995) (quoting Richards v. Commonwealth, 8 Va. App. 612, 616, 383 S.E.2d 268, 271 (1989)).

-

a lawful detention of Kidd.  Moreover, contrary to Kidd's argument, the fact that Hannah did not see and could not identify the items that were exchanged in the hand-to-hand transactions he observed, does not preclude a finding of reasonable suspicion under these circumstances.[12]

Kidd next argues that Officer Cary conducted an unlawful pat-down of his person.  However, "[u]nder settled principles, once an officer has lawfully detained an individual, 'he is "authorized to take such steps as [are] reasonably necessary to protect [his and others'] personal safety and to maintain the status quo during the course of the [detention]."'"[13]

> An officer may preserve the status quo by
> ordering the person detained to place his
> hands where the officer can see them.
> Additional information may provide the basis
> for a frisk of the person for weapons.  An
> officer "may conduct a limited pat-down
> search of the suspect's outer clothing to
> search for weapons if the officer reasonably
> believes, based on specific and articulable
> facts, that the suspect might be armed and
> dangerous."  . . . Additional factors

---

[12] See DePriest v. Commonwealth, 4 Va. App. 577, 585, 359 S.E.2d 540, 543-44 (1987) (holding that where an officer observed appellant over a three and a half hour period engaging in hand-to-hand contact with multiple people and exchanging money and other objects with multiple people, the events observed established a reasonable suspicion of criminal activity; and, that a sequence of events which is typical of a common form of narcotics transaction may create a suspicion in a police officer's mind).

[13] Welshman v. Commonwealth, 28 Va. App. 20, 34, 502 S.E.2d 122, 128-29 (1998) (quoting Servis v. Commonwealth, 6 Va. App. 507, 519, 371 S.E.2d 156, 162 (1988) (quoting United States v. Hensley, 469 U.S. 221, 235 (1985))).

-

> appropriate for consideration may include the reputation of the neighborhood as a high-crime area.[14]

Indeed, "[i]n deciding whether to make a stop or effect a pat-down search, an officer is 'entitled to rely upon the totality of the circumstances-the whole picture.'"[15]  "The totality of the circumstances includes 'the character of the offense.'"[16]  This Court has held that "'suspicion of narcotics possession and distribution . . . gives rise to an <u>inference of dangerousness</u>.'"[17]  Thus, the protective pat-down search conducted here was reasonable in light of the fact that Cary had a reasonable suspicion that Williams was presently engaged in narcotics distribution, as well as the facts that the area was known as a high-crime area, that the officers had recently heard gunshots in the area, and that there were "hundreds" of "spent" shell casings "littering" the ground near where Kidd was standing. On these facts, Cary clearly had reason to believe that Kidd might be armed

---

[14] <u>Id.</u> (quoting <u>Phillips v. Commonwealth</u>, 17 Va. App. 27, 30, 434 S.E.2d 918, 920 (1993)) (citations omitted).

[15] <u>Peguese v. Commonwealth</u>, 19 Va. App. 349, 351, 451 S.E.2d 412, 413 (1994) (quoting <u>Lansdown v. Commonwealth</u>, 226 Va. 204, 212, 308 S.E.2d 106, 112 (1983)).

[16] <u>Id.</u> at 351-52, 451 S.E.2d at 413 (quoting <u>Williams v. Commonwealth</u>, 4 Va. App. 53, 67, 354 S.E.2d 79, 87 (1987)).

[17] <u>Id.</u> (quoting <u>Williams</u>, 4 Va. App. at 67, 354 S.E.2d at 87) (emphasis in original).

-

and dangerous, and that the "abnormal protrusion" he observed might be a weapon.[18]

## III.

Kidd next argues that Cary conducted a "warrantless and unlawful strip search" of his person. We first note that "the Fourth Amendment right to be free from unreasonable seizures may be waived, orally or in writing, by voluntary consent to a warrantless search of a person, property or premises."[19] Here, Kidd apparently concedes that his statement to Cary "that's all I've got, you can check me," amounted to a consent to search. However, Kidd argues that the consent to search did not equate to a consent to conduct a strip search or "body cavity" search.

"A search of the person may range from a Terry-type pat-down to a generalized search of the person to the more intrusive strip search or body cavity search. 'A strip search generally refers to an inspection of a naked individual, without any scrutiny of his body cavities. A visual body cavity search extends to a visual inspection of the anal and genital areas.'"[20]

---

[18] Kidd raises no argument concerning the lawfulness of Officer Cary's seizure of the coin purse, after he had viewed it and determined that it was not a weapon. Accordingly, we do not address this issue on appeal. See Rule 5A:18.

[19] Commonwealth v. Rice, 28 Va. App. 374, 378, 504 S.E.2d 877, 879 (1998).

[20] Hughes, 31 Va. App. at 455, 524 S.E.2d at 159 (quoting Commonwealth v. Thomas, 708 N.E.2d 669, 672 n.4 (Mass. 1999)); see also McCloud v. Commonwealth, 35 Va. App. 276, 282-83, 544 S.E.2d 866, 868-69 (2001).

-

"'A "manual body cavity search" includes some degree of touching or probing of body cavities.'"[21]

Here, Kidd was subjected to only a "strip search."  Looking into Kidd's underwear for drugs was a strip search of his person within the purview of the Fourth Amendment, as Cary did nothing more than inspect Kidd's partially-naked body.[22]  He did not scrutinize Kidd's body cavities as Kidd suggests.

"We held in Moss v. Commonwealth, 30 Va. App. 219, 225, 516 S.E.2d 246, 249 (1999), that a defendant's consent to search his person does not include consent to conduct a strip search."[23] "[S]trip searches, which are 'peculiarly intrusive,' are constrained by due process requirements of reasonableness and require 'special justification.'"[24]  However, it is well settled that "[a] consensual search is reasonable if the search is within

---

[21] Id. (quoting Cookish v. Powell, 945 F.2d 441, 444-45 n.5 (1st Cir. 1991)).

[22] See id.  Compare McCloud, 35 Va. App. at 283-84, 544 S.E.2d at 869 (holding a search did not fall within the definition of a strip search where the officer merely pulled back the defendant's boxer shorts, only reached two inches into the shorts to remove the contraband, and did not see the defendant's genitalia).

[23] Id. at 456, 524 S.E.2d at 160.

[24] Id. at 457, 524 S.E.2d at 160 (quoting Taylor v. Commonwealth, 28 Va. App. 638, 642, 507 S.E.2d 661, 663 (1998)).

-

the scope of the consent given."[25]   In this case, Cary lawfully conducted the initial pat-down search, which Kidd was aware focused mainly on his crotch area, and which included a search of his sweatpants.  Kidd then volunteered that he had nothing further and consented to Cary's continued search of his person.  We find, on these facts, that Kidd voluntarily consented to the search of his underwear when he stated "go ahead check me," and that the search conducted thus did not exceed the scope of the consent in light of the attendant circumstances.[26]

IV.

Finally, Kidd argues that the evidence presented by the Commonwealth was insufficient to establish that he intended to distribute the cocaine.  We disagree.

> When a defendant challenges the sufficiency of the evidence on appeal, the reviewing court must give the judgment of the trial court sitting without a jury the same weight as a jury verdict.  The appellate court has the duty to examine the evidence that tends to support the conviction and to uphold the conviction unless it is plainly wrong or without evidence to support it.[27]

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently

---

[25] Grinton v. Commonwealth, 14 Va. App. 846, 850, 419 S.E.2d 860, 862 (1992).

[26] See Hughes, 31 Va. App. at 458, 524 S.E.2d at 161.

[27] Tarpley v. Commonwealth, 261 Va. 251, 256, 542 S.E.2d 761, 763 (2001) (citations omitted).

-

convincing to exclude every reasonable hypothesis except that of guilt."[28]  Nevertheless, the Commonwealth "is not required to disprove every remote possibility of innocence, but is, instead, required only to establish guilt of the accused to the exclusion of a reasonable doubt."[29]  The hypotheses which the prosecution must reasonably exclude are those "which flow from the evidence itself, and not from the imagination of defendant's counsel."[30]

"The principle is well established in Virginia that a relatively small quantity of cocaine warrants the inference that an accused possessed it for personal use."[31]  Here, the police seized only 2.9 grams of cocaine from Kidd's person.  However, "[p]ossession of a small quantity of a controlled substance, . . . when considered with other circumstances, may be sufficient to establish an intent to distribute."[32]  The method of packaging of the controlled substance is such a circumstance, if considered in conjunction with additional evidence, to preclude the inference that it was purchased in the

---

[28] Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983).

[29] Cantrell v. Commonwealth, 7 Va. App. 269, 289, 373 S.E.2d 328, 338 (1988).

[30] Id. at 289-90, 373 S.E.2d at 338-39 (citation omitted).

[31] Christian v. Commonwealth, 33 Va. App. 704, 721, 536 S.E.2d 477, 486 (2000).

[32] Servis, 6 Va. App. at 524, 371 S.E.2d at 165 (emphasis added).

-

packaged form for personal use, rather than being held in that fashion for distribution.[33]  "Possession of a large sum of money, especially in small denominations, and the absence of any paraphernalia suggestive of personal use, . . . are regularly recognized as [other] factors indicating an intent to distribute."[34]  Further, the characterization of the area in which an accused was arrested as an area known for drug transactions has been found to be another relevant factor in determining intent.[35]

This record provides abundant evidence that Kidd possessed cocaine with the intent to distribute it.  Kidd was observed engaging in "hand-to-hand" transactions in an area known for illegal drug activity, and he was seen handing an individual a "large wad of cash."  In addition, 36 individual baggies, each containing one "dose" of cocaine were found on his person, and although only $30.00 was found in the change purse, Kidd had no drug paraphernalia on him indicating personal use.  Thus, we hold that the trial court was not plainly wrong in finding the evidence sufficient as a matter of law to establish Kidd's possession of the cocaine with the intent to distribute it.

---

[33] Id.

[34] Welshman, 28 Va. App. at 37, 502 S.E.2d at 130.

[35] See Brown v. Commonwealth, 15 Va. App. 232, 234, 421 S.E.2d 911, 912 (1992).

-

For the foregoing reasons, we affirm the judgment of the trial court.

<u>Affirmed</u>.

Benton, J., dissenting.

In Hughes v. Commonwealth, 31 Va. App. 447, 453, 524 S.E.2d 155, 158 (2000), an officer conducting a Terry stop obtained consent for "a pat-down search."  At the conclusion of that search, the officer told the detainee, "if the money is in your left pocket, then, the drugs should be in your underwear."  Id. The detainee then "agreed to allow [the officer] to 'check further.'"  Id.  In Hughes, we held "on these facts, that [the detainee] voluntarily consented to a pat-down search and to a search of his underwear to 'check further.'"  Id. at 458, 524 S.E.2d at 161.

Significantly, in Hughes, we noted that in the absence of such a specific consent to a strip search, "[w]e held in Moss v. Commonwealth, 30 Va. App. 219, 225, 516 S.E.2d 246, 249 (1999), that a defendant's consent to [a] search [of] his person does not include consent to conduct a strip search."  Hughes, 31 Va. App. 456, 524 S.E.2d at 160.  I believe our holding in Moss controls our judgment on the search in this case.

The evidence in this case proved that, after the police officer saw a bulge in Kidd's pants, the officer patted that area during a protective search for weapons.  During that frisk, the officer removed a change purse from between Kidd's sweatpants and underpants.  He did not expose Kidd's genitalia or reach inside his underwear.  In response to Kidd's comment, "That is all I got; you can check," the officer put his fingers

-

inside Kidd's underwear, pulled Kidd's underwear away from Kidd's body, and looked inside Kidd's underwear to inspect his genitalia. There, he saw a bag of cocaine. In Moss, we ruled as follows:

> There is no evidence that . . . consent to a "search of his person" extended to a strip search or a body cavity search. The Commonwealth's reliance upon consent for this intrusion is misplaced. Additionally, the Commonwealth does not satisfy the additional requirements for such an intrusion without consent or without a warrant. We do not address issues concerning the place and manner of the search because we find that there was not a "clear indication" that drugs were located in [the genital area], and we find no exigent circumstances justifying a strip search . . . without a warrant.

30 Va. App. at 225, 516 S.E.2d at 249.

Applying the same rationale to the facts of this case, I would hold, as we did in Moss, "that the strip search . . . was impermissible and that the trial [judge] erred in refusing to suppress the evidence obtained from the search." Id. at 226, 516 S.E.2d at 250. Accordingly, I would reverse the conviction and remand for a new trial.

-