COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Felton, Judges Benton and Petty
Argued at Richmond, Virginia


COREY KING, S/K/A
  COREY D. KING
                                                             OPINION BY
v.         Record No. 1368-06-2                    JUDGE WILLIAM G. PETTY
                                                             MAY 15, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

Karen L. Stallard, Supervising Appellate Public Defender (Office of
the Public Defender, on briefs), for appellant.

Michael T. Judge, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Appellant Corey King seeks reversal of his conviction for possession of cocaine with

intent to distribute, in violation of Code § 18.2-248. He contends the trial court erred by denying

his motion to suppress evidence discovered during a warrantless strip and body cavity search

conducted following his arrest. For reasons discussed below, we agree with King and reverse.

I. BACKGROUND

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the

appellant] to show that the ruling . . . constituted reversible error.'" McGee v. Commonwealth,

25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Fore v. Commonwealth,

220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). On appellate review, "we are bound by the

trial court's findings of historical fact unless 'plainly wrong' or without evidence to support

them." McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (citing Ornelas v. United States, 517 U.S.

690, 699 (1996)). On appeal from the trial judge's denial of a motion to suppress, "we view the

evidence in the light most favorable to the Commonwealth, and grant to the Commonwealth all reasonable inferences fairly deducible from that evidence." Grandison v. Commonwealth, 48 Va. App. 314, 316, 630 S.E.2d 358, 359 (2006) (citing Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991)). However, a defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal. See Ornelas, 517 U.S. at 691.

The evidence presented at the hearing on the motion to suppress revealed that Richmond Police Officers Ralph Mills and Wayne Graves were assigned to "make drug arrests up and down Cary Street." They saw King leaving a house where two previous drug arrests had been made, and which was still under police observation. They approached him, learned his identity, and requested King's permission to run his identification information for any outstanding warrants. King complied, and the officers learned that King had an outstanding violation of probation warrant. After the officers arrested and handcuffed King, he briefly ran from them for a short distance but was quickly apprehended. They then took King to the "lockup" and to the magistrate.

At the lockup, King was taken into a small room where the prisoners are searched. Although the record indicates that "deputies" searched King in the presence of Officer Mills, there is no indication where the lockup was located or whether it was a part of a jail facility. At a hearing on the motion to suppress, Officer Mills initially provided a relatively vague description of the search[1]:

---

[1] At trial, Officer Mills provided additional details of the search which further supported King's argument that the search was more than a strip search. King did not renew his motion to suppress, nor otherwise ask the trial court to reconsider its prior ruling based on the additional testimony. Because this additional evidence would not change our conclusion, we will limit our analysis to the facts presented during the hearing on the motion to suppress.

[Officer Mills]:	They [the deputies] had Mr. King remove his clothing, and there they found the narcotics kind of in his groin area, on his buttocks area, I believe . . . .

On cross-examination, Officer Mills answered the following questions that expanded his description of the search:

[King's Attorney]:	And I know you've already testified to this in your general district court hearing, but the drugs were found in his – between his buttock cheeks?

[Officer Mills]:	Yes, ma'am.

[King's Attorney]:	Okay. And is it correct – I believe I'm remembering this correctly – that he was asked to bend over and spread his buttock cheeks, and then drugs were found in that area?

[Officer Mills]:	Correct.

Tests performed on the evidence retrieved from King's body during the search revealed that he had concealed a total of three grams of cocaine in twenty-six individually knotted "plastic bag corners." Before trial, King moved to suppress this evidence pursuant to "the Fourth Amendment of the United States Constitution, Article One, Section 10 of the Virginia Constitution, and Sections 19.2-59 and 19.2-60, Code of Virginia . . . ." After hearing evidence, the trial court denied the motion to suppress, finding that the search did not constitute a body cavity search. Following a bench trial, the trial court convicted King of possession of cocaine with the intent to distribute, in violation of Code § 18.2-248.

## II. ANALYSIS

King contends the trial court erred when it concluded that the warrantless search of his body was reasonable under the Fourth Amendment and thereafter denied his motion to suppress. He argues that as an arrestee, law enforcement was required to have a "clear indication" that

evidence would be found during a search of his body and either obtain a search warrant or establish exigent circumstances prior to engaging in this type of intrusive search. Hughes v. Commonwealth, 31 Va. App. 447, 524 S.E.2d 155 (2000) (*en banc*).

The Commonwealth asserts that no violation occurred because (1) the deputies conducted a strip search as defined in Hughes and (2) even if a more intrusive search took place, the search was reasonable because King was in the process of being admitted into a detention center, and proper steps were necessary to ensure that contraband was not brought into the facility. In support of this argument, the Commonwealth relies upon Craddock v. Commonwealth, 40 Va. App. 539, 580 S.E.2d 454 (2003). Based upon the record before us, we conclude that the warrantless search was an unreasonable visual body cavity search and in violation of the Fourth Amendment.

The Fourth Amendment prohibits only "unreasonable searches and seizures," Anderson v. Commonwealth, 20 Va. App. 361, 363, 457 S.E.2d 396, 397 (1995), not reasonable ones. "The test of reasonableness . . . is not capable of precise definition or mechanical application." Bell v. Wolfish, 441 U.S. 520, 559 (1979). For every case, this test "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Id. Moreover, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id.

An established exception to the warrant requirement of the Fourth Amendment exists for a search incident to a lawful arrest. See United States v. Robinson, 414 U.S. 218, 235 (1973) (holding that a person under lawful custodial arrest based upon probable cause is subject to a "full search of the [arrestee's] person" and that the search is "reasonable" under the Fourth Amendment). However, when law enforcement officers perform a "full search" of an arrestee without a warrant, their authority is "only skin deep." Commonwealth v. Gilmore, 27 Va. App.

- 4 -

320, 328, 498 S.E.2d 464, 468 (1998). We have previously held that a "warrantless search involving bodily intrusion, even though conducted incident to a lawful arrest, violates the Fourth Amendment unless (1) the police have a 'clear indication' that evidence is located within a suspect's body and (2) the police face exigent circumstances." Id. at 330, 498 S.E.2d at 469. Moreover, when performing this type of search, authorities must also satisfy "'relevant Fourth Amendment standards of reasonableness.'" Id. (quoting Schmerber v. California, 384 U.S. 757, 768 (1966)).

Previously, we have defined a "strip search" as "an inspection of a naked individual, without any scrutiny of his body cavities." Kidd v. Commonwealth, 38 Va. App. 433, 446, 565 S.E.2d 337, 343 (2002). A "visual body cavity search" is more intrusive and "extends to a visual inspection of the anal and genital areas." Id. (citation omitted). Finally, a "manual body cavity search" involves "some degree of touching or probing of body cavities" and is the most intrusive type of body search. Id. (citation omitted).

Applying these definitions to the facts before us, we conclude that the evidence proves a visual search of King's body cavity occurred. Officer Mills testified that King was required to bend over and spread his buttock cheeks. This is exactly the same type of search we characterized as a visual body cavity search in Hughes, 31 Va. App. at 447, 524 S.E.2d at 155. As stated above, this type of search is only permissible in specific circumstances. See Gilmore, 27 Va. App. at 330, 498 S.E.2d at 469. Therefore, we hold that the Commonwealth's argument that the deputies conducted a strip search of King is not supported by the evidence presented at the hearing on the motion to suppress.

The Commonwealth further argues that the search was reasonable under the circumstances, and as support for its position relies upon Bell, 441 U.S. at 520, and Craddock, 40

Va. App. at 539, 580 S.E.2d at 454. For the following reasons, however, we determine that these cases are inapposite.

In Bell, the United States Supreme Court held that the Fourth Amendment was not violated when a correctional institution required visual body cavity searches of pretrial detainees after every contact visit with visitors from outside the institution. 441 U.S. at 558-60. In the case before us, although the arresting officers brought King to the lockup, the record is silent concerning whether he appeared before the magistrate prior to the search or whether he was ever committed to jail. This distinction is crucial because "a person who is searched incident to arrest is not yet incarcerated [and] he or she has greater constitutional protection than a pretrial detainee." Gilmore, 27 Va. App. at 331 n.5, 498 S.E.2d at 469 n.5.

In Craddock, the defendant was "'processed to go into jail' with the understanding that he had been 'brought into the sheriff's custody on a commitment brought by the magistrate for failure to appear.'" 40 Va. App. at 544, 580 S.E.2d at 457. According to written policies at the detention center, and based on knowledge that law enforcement had recently discovered drugs hidden in Craddock's buttocks area, the deputies decided to conduct a strip search. Id. at 544-45, 580 S.E.2d at 457. During the course of the strip search, the deputies observed "a plastic bag with suspected narcotics between Craddock's 'butt cheeks.'" Id. at 545, 580 S.E.2d at 457. A deputy was able to observe the plastic bag "without the need to spread Craddock's 'butt cheeks apart' or to 'manipulate his cheeks.'" Id.

The search in Craddock was conducted after the defendant had been committed to jail as a pretrial detainee, in accordance with written policies and only after the deputies had a stated reason to believe that Craddock was hiding contraband. Id. at 544-45, 580 S.E.2d at 457. The record also contained ample justification for searching Craddock, including testimony of previous attempts to smuggle drugs hidden in body cavities into the jail and the testimony of a

physician that the amount of cocaine hidden by the defendant would have been lethal if the bag had burst. Id. at 544-47, 580 S.E.2d at 457-59. In contrast, the record before us is devoid of any testimony that King was being admitted to a correctional facility. And, unlike Craddock, there was no testimony concerning under what circumstances the deputies had authority to conduct this type of search at the lockup or why such a search would be appropriate.

Further, unlike Craddock, no evidence exists in this record to establish what led deputies to conduct the intrusive search at issue in this case. The Commonwealth argues that information in the probation violation report attached to the capias established that King was a person with a known history of drug abuse. Even if we were to assume that a defendant's prior conviction of a drug offense was alone sufficient justification for a body cavity search, there is no evidence that the deputies who conducted the search had knowledge of the contents of the probation violation report. When the deputies searched King, the only information contained in the record regarding King and potential drug activity known by them was that King was seen leaving a house where two previous drug arrests had been made. This is hardly the "clear indication" that evidence was concealed in King's body that is required for a body cavity search. See Hughes, 31 Va. App. at 460, 524 S.E.2d at 162 (holding that an informant's tip that defendant was dealing drugs and kept them hidden in his underwear was insufficient to establish a clear indication that drugs were concealed in a body cavity).

Moreover, the record is devoid of any evidence of required exigent circumstances, such as "imminent medical harm to [King], or secretion of a weapon . . . ." Moss v. Commonwealth, 30 Va. App. 219, 226, 516 S.E.2d 246, 250-51 (1999). Therefore, the Commonwealth has failed to demonstrate any "special justification" for the search conducted in this case.

In summary, the search of King was undertaken without the authorization of a search warrant. It was, therefore, presumptively unreasonable, and the Commonwealth assumed the

burden of establishing otherwise.  From the record before us, we conclude that the Commonwealth failed to establish the facts that we have previously held are a necessary predicate to a warrantless visual body cavity search.  Accordingly, we hold that the search of King was unreasonable and violated the Fourth Amendment.  See Gilmore, 27 Va. App. at 320, 498 S.E.2d at 464.

## III.  CONCLUSION

For the reasons stated above, we reverse King's conviction for possession of cocaine with intent to distribute and remand for further proceedings if the Commonwealth be so advised.

Reversed and remanded.