COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Coleman and Lemons
Argued at Salem, Virginia


TRACY LEWAYNE MOSS
                                        OPINION BY
v.   Record No. 1235-98-3        JUDGE DONALD W. LEMONS
                                         JULY 6, 1999
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Mosby G. Perrow, III, Judge

Amanda E. Shaw, Assistant Public Defender
(Office of the Public Defender, on brief),
for appellant.

Marla Graff Decker, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


Tracy Lewayne Moss appeals from his convictions for possession of cocaine and escape from custody. On appeal, he argues (1) that his motion to suppress evidence seized in a strip search should have been granted, and (2) that because he was not lawfully in custody he could not be guilty of escape. We hold that his motion to suppress should have been granted but also hold that he was in custody for purposes of his conviction for escape. Accordingly, we affirm in part, reverse in part, and remand.

I.   BACKGROUND

On October 22, 1997, Investigators K.T. Swisher, Wayne Duff, and Kevin D. Holyfield of the Lynchburg Police Department

stopped at a gas station on Memorial Avenue in Lynchburg.  When Swisher returned from paying for fuel, Duff informed him that a blue sedan had pulled into the parking lot and that he thought that Tracy Lewayne Moss was the driver.

During Moss' hearing on his motion to suppress, Swisher testified that he walked up to Moss, identified himself, and asked permission to search both Moss and the car for drugs. Swisher stated that Moss "advised me he did not mind if I did so."  While Swisher was searching Moss' person, Holyfield noticed a "brown, hand-rolled marijuana cigarette laying in the ashtray in plain view between the driver's seat and the front passenger seat of the vehicle."  Gerard Haythe was sitting in the passenger seat.  Swisher testified that "[a]t that point Mr. Moss and Mr. Haythe were not free to leave."

Duff also testified at the hearing on Moss' motion to suppress, stating that he asked and received permission from Haythe to search his person.  All three investigators searched Haythe in the bathroom of the gas station and recovered crack cocaine from his buttocks.  Swisher testified that during the search of Haythe, Moss was walking around "back and forth in front of the store on the sidewalk."  After searching Haythe, Swisher began to issue Moss a uniform summons for possession of marijuana.  However, Swisher realized that Moss was a juvenile and decided not to release him on a summons.  At this point, Duff and Holyfield took Moss to the restroom and conducted a

strip search.  Swisher stated that they strip searched Moss because he knew from "training and experience that that's an area the drug dealers often conceal their narcotics because they believe the police will not search that area" and that after finding drugs in that area on Haythe, it was "possible, if not probable that Mr. Moss had narcotics in his buttocks area." Duff and Holyfield found what they suspected to be crack cocaine in Moss' buttocks.

At the hearing on Moss' motion to suppress, Moss argued that he was not under arrest, that the officers had no probable cause to arrest him for possession of marijuana, and that even if they possessed probable cause, the search of his buttocks exceeded the constitutionally permitted scope of a search incident to arrest.  The trial judge disagreed, stating, "I don't think that consent was ever revoked . . . . But anyway . . . I'm going to find this fact:  That the police had probable cause to arrest your client [Moss] for possession of marijuana; and they were in the process of doing so when they decided to strip search him."

After being arrested for possession of cocaine and marijuana, Moss was taken to the Lynchburg Police Department. At trial, Duff testified that Moss was in the interview room when he asked to use the restroom.  Instead of coming back into the interview room when he was finished, Moss ran out of the building.  Moss was eventually tackled on the sidewalk outside

the police station.  In a bench trial, Moss was convicted of possession of cocaine and escape from custody.

## II.  MOTION TO SUPPRESS

On appeal, it is the defendant's burden to show "that the denial of [the] motion to suppress constitute[d] reversible error."  Motley v. Commonwealth, 17 Va. App. 439, 440-41, 437 S.E.2d 232, 233 (1993).  "Ultimate questions of reasonable suspicion and probable cause to make a warrantless search involve questions of both law and fact and are reviewed de novo on appeal."  McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc) (citation omitted).

It is beyond peradventure that "probable cause" is a flexible, common sense standard dealing not with technical analysis but rather with practical considerations in the context of the totality of the circumstances.  See Texas v. Brown, 460 U.S. 730, 742 (1983); Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981), cert. denied, 456 U.S. 906 (1982). Additionally, trained and experienced police officers "may be able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer."  Richards v. Commonwealth, 8 Va. App. 612, 616, 383 S.E.2d 286, 270-71 (1989).

Moss gave Swisher permission to search his person and the vehicle.  While Swisher was engaged in a conversation with Moss, Holyfield found what he believed to be a marijuana cigarette or

"Philly blunt" in the open ashtray in the dashboard between the driver and the passenger seats.  From his training and experience, the officer stated that the packaging was consistent with a type of hand-rolled marijuana cigarette.  At that point, the officers had probable cause to arrest Moss and Haythe for possession of marijuana.  See Powell v. Commonwealth, 27 Va. App. 173, 177-78, 497 S.E.2d 899, 901-04 (1998); DePriest v. Commonwealth, 4 Va. App. 577, 583-84, 359 S.E.2d 540, 543-44 (1987).

Upon determining that Moss was a juvenile, the officers took him into custody pursuant to Code § 16.1-246.  A lawful custodial arrest authorizes a full search of the person.  See United States v. Robinson, 414 U.S. 218, 234-35 (1973); but see Knowles v. Iowa, 119 S. Ct. 484 (1998).  Additionally, Moss had previously given consent to a search of his person.  But his consent to search his person and his lawful arrest would not, without more, justify a strip search or a body cavity search.

> [S]trip searches require special justification since they are peculiarly intrusive. . . .  In each case we must balance the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Taylor v. Commonwealth, 28 Va. App. 638, 642, 507 S.E.2d 661, 663 (1998).  Additionally, such intrusive searches without a

warrant may not be conducted on the "mere chance that desired evidence might be obtained." Schmerber v. California, 284 U.S. 757, 769-70 (1966). We have previously stated:

> a warrantless search involving a bodily intrusion, even though conducted incident to a lawful arrest, violates the Fourth Amendment unless (1) the police have a "clear indication" that evidence is located within a suspect's body and (2) the police face exigent circumstances. In addition, because the Fourth Amendment "constrain[s] . . . against intrusions . . . which are made in an improper manner," the means and procedures employed by the authorities to conduct a search involving an intrusion into the body must also satisfy relevant Fourth Amendment standards of reasonableness.

Commonwealth v. Gilmore, 27 Va. App. 320, 330-31, 498 S.E.2d 464, 469 (1998) (citations omitted).

There is no evidence that Moss' consent to a "search of his person" extended to a strip search or a body cavity search. The Commonwealth's reliance upon consent for this intrusion is misplaced. Additionally, the Commonwealth does not satisfy the additional requirements for such an intrusion without consent or without a warrant. We do not address issues concerning the place and manner of the search because we find that there was not a "clear indication" that drugs were located in Moss' buttocks, and we find no exigent circumstances justifying a strip search or body cavity search without a warrant.

Officer Swisher testified that certain narcotics dealers hide contraband in areas they do not believe the police will

search, such as the buttocks. Here, there was insufficient evidence for a "clear indication" that drugs were located in Moss' buttocks. His friend, Haythe, had crack cocaine in his buttocks; however, the habits of his friend cannot be imputed to Moss. The presence of $55 in cash, a pager, and probable cause to arrest for simple possession of marijuana is similarly insufficient to justify the conclusion that Moss was hiding drugs in his buttocks. These circumstances are precisely what the Court in Schmerber was concerned about when it stated that intrusive searches without a warrant may not be conducted on the "mere chance that desired evidence might be obtained." Schmerber, 384 U.S. at 770.

Additionally, even if there had been a "clear indication" that Moss possessed drugs within his body, the officers did not obtain a warrant prior to searching Moss. "A warrantless search is per se unreasonable and violative of the Fourth Amendment of the United States Constitution, subject to certain exceptions." Tipton v. Commonwealth, 18 Va. App. 370, 373, 444 S.E.2d 1, 2 (1994) (citation omitted). An "exception to the warrant requirement exists when there are exigencies in a situation which make such an exception imperative." Id. at 373, 444 S.E.2d at 2 (citations omitted).

In Schmerber, the Court held that the considerations that justify the authority to search incident to a lawful arrest - the need to disarm the suspect and to prevent the destruction

of evidence under the suspect's direct control - "have little applicability with respect to searches involving intrusions beyond the body's surface." Schmerber, 384 U.S. at 769. We do not exclude the possibility that in a particular case the risk of destruction of evidence, imminent medical harm to the suspect, or secretion of a weapon may provide exigent circumstances for a search involving intrusion beyond the body's surface. Even if there was a "clear indication" that contraband was located in Moss' body, there were no exigencies present in this case justifying a warrantless search. Nothing in the record suggests that Moss had a concealed weapon, nor was there a risk of destruction of evidence. No medical emergency existed. Even though it was conducted incident to a lawful arrest, the search of Moss involved bodily intrusion requiring additional exigencies to be justified without a warrant.

We find that the strip search of Moss was impermissible and that the trial court erred in refusing to suppress the evidence obtained from the search. We find it unnecessary to address Moss' contention that the strip search violated Code § 19.2-59.1(A).

### III. ESCAPE FROM CUSTODY

At the time Moss absconded from the police station he was in lawful custody. Moss was under arrest for possession of marijuana and cocaine. Because Moss was a juvenile, he was taken into custody pursuant to Code § 16.1-248.1. The evidence

clearly demonstrates that Moss submitted to the authority of the police, and the officer's accommodation of his request to use toilet facilities does not change his status. See Cavell v. Commonwealth, 28 Va. App. 484, 506 S.E.2d 552 (1998).

IV. CONCLUSION

For the reasons stated above, we affirm Moss' conviction for escape and reverse his conviction for possession of cocaine and remand for further proceedings if the Commonwealth be so advised.

Affirmed in part,
reversed in part
and remanded.