COURT OF APPEALS OF VIRGINIA


Present: Judge Humphreys, Senior Judges Hodges and Overton
Argued at Chesapeake, Virginia


MICHAEL WOOLFOLK
                                        MEMORANDUM OPINION[*] BY
v.    Record No. 1843-99-2              JUDGE NELSON T. OVERTON
                                             JUNE 6, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                       Robert W. Duling, Judge

            Gregory W. Franklin, Assistant Public
            Defender (Office of the Public Defender, on
            brief), for appellant.

            Marla Graff Decker, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     On appeal from his conviction of possession of cocaine with

intent to distribute, in violation of Code § 18.2-248, Michael

Woolfolk contends that the trial court erred in denying his

motion to suppress evidence on the grounds that (1) the

Commonwealth did not prove the veracity and reliability of the

informant and (2) the search of Woolfolk's person that produced

the cocaine violated his Fourth Amendment rights against

unreasonable searches and seizures.  We affirm the judgment of

the trial court.

_____

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

In reviewing the trial court's denial of Woolfolk's motion to suppress, "we view the evidence in the light most favorable to [the Commonwealth], the prevailing party below, and we grant all reasonable inferences fairly deducible from that evidence." Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). In our review, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). We consider de novo whether those facts implicate the Fourth Amendment and, if so, whether the officer unlawfully infringed upon an area protected by the Fourth Amendment. See id.

On November 25, 1998, Richmond Police Detective Scott Shapiro received a telephone call from an informant whom he described as confidential and reliable. The informant told Detective Shapiro that he "had just observed a black male in the park at First and Milton [Streets] make a drug deal . . . . " The dealer, named Mike, was wearing a black and red coat and jeans. The informant told Detective Shapiro that, after completing the transaction, Mike had placed the rest of the drugs into his pants, specifically "into the groin area of his jeans."

About two to three minutes after Detective Shapiro received the informant's call, he and Officer Michael Bohannon arrived at

-

the park.  They saw Woolfolk sitting on a bench, watching a basketball game.  Woolfolk, a young, black male, was wearing jeans and had a red and black coat sitting next to him on the bench.  The officers approached him and asked his name.  He told them his name and offered identification.

The officers then requested permission to search Woolfolk.  He refused.  They informed him that they were going to search him anyway.  The officers handcuffed and escorted Woolfolk to a park building, where they anticipated searching him out of the public view.  While walking to the park building, Woolfolk told Officer Bohannon that he was hiding drugs near his genitals.  The men reached the building, and Officer Bohannon began to search Woolfolk.  He first checked Woolfolk's pockets, then opened the waistband of his jeans.  He spotted the contraband and reached into Woolfolk's pants to obtain the cocaine.

Woolfolk contends that the Commonwealth did not meet its burden of proving the reliability and veracity of Detective Shapiro's informant.  He argues that the Commonwealth cannot simply assert conclusively that Detective Shapiro had a "reliable, confidential informant."  The evidence, however, sufficiently supports the trial court's finding that the informant's information, coupled with subsequent corroboration of the tip, gave the officers probable cause to arrest Woolfolk.

The informant called Detective Shapiro directly.  By implication, Detective Shapiro had established a relationship

-

with the informant and could judge the credibility of the information. The tip was detailed, based upon observation of a criminal transaction. The informant described Woolfolk's appearance and apparel, gave his name, and described the drug transaction. Within a few minutes, Detective Shapiro arrived at the given location.

Detective Shapiro was also able to corroborate the information, thereby increasing the reliability of the tip. He arrived at the location, and he viewed Woolfolk, a young, black male, watching a ball game. Woolfolk possessed a red and black jacket and was wearing jeans. More importantly, when the officers approached, Woolfolk offered his name, which was that given by the informant.

At the suppression hearing, defense counsel did not object to the admissibility of Detective Shapiro's statement that the caller had been a "reliable, confidential informant." Defense counsel had the opportunity to present evidence that contradicted Detective Shapiro's statement, but no such controverting evidence was offered. The evidence offered supports the finding that the informant was reliable, despite the fact that Detective Shapiro was not questioned as to details of his experience with the informant. Detective Shapiro's testimony that the informant was reliable, the details given by the informant, and the subsequent corroboration of those details

-

all reinforce the officers' confidence in the information provided.

Woolfolk next contends that he was the victim of a highly intrusive, warrantless strip search in public and, therefore, that the search was unreasonable. See Moss v. Commonwealth, 30 Va. App. 219, 516 S.E.2d 246 (1999). Unquestionably, Woolfolk was seized by the officers. They informed Woolfolk that he was under suspicion for drug dealing and that they were going to search him without his consent. They placed him in handcuffs and ordered him to accompany them to the building. "Whether [a warrantless] arrest is constitutionally valid depends . . . upon whether, at the moment the arrest was made, the officers had probable cause to make it . . . ." Beck v. Ohio, 379 U.S. 89, 91 (1964). See Carter v. Commonwealth, 9 Va. App. 310, 312, 387 S.E.2d 505, 506 (1990).

> When making a warrantless arrest, an officer "'may rely upon information received through an informant, rather than upon his direct observation,'" so long as the officer has reasonable grounds to believe that the informant's statement is true. Because the value and reliability of information provided by informants to the police varies greatly, the veracity of an informant and the basis of his or her knowledge regarding a particular tip are "relevant considerations" in the totality-of-the-circumstances analysis that guides the determination of probable cause. When reviewing an officer's determination of probable cause based upon information provided by an informant, a court should conduct a "balanced assessment of the relative weights of all the various indicia

-

> of reliability (and unreliability) attending
> [the] informant's tip."

Jefferson v. Commonwealth, 27 Va. App. 1, 12-13, 497 S.E.2d 474, 479-80 (1998) (citations omitted).

Once Woolfolk was lawfully seized, the officers could reasonably search him, incident to that arrest. See United States v. Robinson, 414 U.S. 218, 234-35 (1973). The officers had a "clear indication" of where the drugs were located, as Woolfolk told the officers the location as they walked through the park. But see Hughes v. Commonwealth, 31 Va. App. 447, 460, 524 S.E.2d 156, 161 (2000) (en banc). Woolfolk's contention that the officers needed exigent circumstances to perform a strip search is not relevant to the facts of this case, as no strip search occurred.

"'A strip search generally refers to an inspection of a naked individual, without any scrutiny of his body cavities.'" Hughes, 31 Va. App. at 455, 524 S.E.2d at 159 (citation omitted). The officers did not command Woolfolk to disrobe. Officer Bohannon unbuttoned Woolfolk's jeans in order to retrieve the cocaine that Woolfolk had admitted was in his underwear. The officers did not need Woolfolk to disrobe, nor did they require him to do so in order to conduct an inspection.

The officers had probable cause to arrest Woolfolk. Detective Shapiro had received information from a reliable informant, and he was able to corroborate the details of the

-

information upon arriving at the given location. "If an officer has reason to believe that a person is committing a felony in his presence by possessing contraband or a controlled substance, the officer has probable cause to arrest the individual without a warrant." Buck v. Commonwealth, 20 Va. App. 298, 304, 456 S.E.2d 535, 537 (1995). "So long as probable cause to arrest exists at the time of the search . . . it is unimportant that the search preceded the formal arrest if the arrest '"followed quickly on the heels of the challenged search."'" Carter v. Commonwealth, 9 Va. App. 310, 312, 387 S.E.2d 505, 506-07 (1990). Accordingly, the judgment of the trial court is affirmed.

The judgment of the trial court is affirmed.

Affirmed.

-