COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Decker and O'Brien
Argued by teleconference

UNPUBLISHED

COMMONWEALTH OF VIRGINIA

v.        Record No. 1376-17-1

LINWOOD LESTER RIVERA

MEMORANDUM OPINION[*] BY
JUDGE MARLA GRAFF DECKER
JANUARY 30, 2018

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Bruce H. Kushner, Judge Designate

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellant.

Floyd J. Oliver, Assistant Public Defender, for appellee.


Linwood Lester Rivera (the defendant) was indicted for possession of a firearm by a

convicted felon in violation of Code § 18.2-308.2.  The defendant filed a pre-trial motion to

suppress evidence, which he alleged was obtained during an unlawful search.  The circuit court

granted the motion and suppressed the evidence.  Pursuant to Code §§ 19.2-398 and -400, the

Commonwealth appeals that pre-trial ruling.  We hold that the record, viewed under the appropriate

legal standard, supports the conclusion that the traffic stop was extended in contravention of the

Fourth Amendment to the United States Constitution.  Consequently, we affirm the circuit court's

suppression of the evidence obtained as a result of that seizure, and we remand the case for further

proceedings consistent with this opinion.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND[1]

On March 4, 2017, Officer R.J. Sawatzke, Jr., with the City of Chesapeake Police Department, was on patrol when he saw a van that did not have "any functioning tag lights," the lights that illuminate the license plates. The officer attempted to initiate a traffic stop, but the van continued to travel on about a quarter of a mile, crossing from Chesapeake into the City of Portsmouth, where it pulled into a gas station and stopped. Officer Sawatzke approached the van and explained to the defendant, who was the driver, the reason for the stop. The officer asked him for his driver's license. The defendant said that he "didn't have it on him" and admitted that he owed "several fines."

Officer Sawatzke returned to his police car and entered the information into his computer in order to check the defendant's driving status. The officer learned that the defendant's license was suspended and he had two previous convictions for driving on a suspended license. There were no outstanding warrants for the defendant's arrest. Based on this information, Sawatzke remained in his police car and began writing a summons for driving on a suspended license. As he wrote the summons, Portsmouth police officers, including a "K-9 unit," arrived on the scene. At this time, Sawatzke also learned that the Portsmouth officers had additional information about the defendant's criminal history.

While continuing to process the summons, Officer Sawatzke decided to ask the K-9 officer to circle the van with his dog. Once the summons was completed, Sawatzke "walked back to the K-9 officer and requested the open-air sniff." He then proceeded to the other Portsmouth officers,

---

[1] On review of a ruling on a motion to suppress, this Court views the evidence in the light most favorable to the party who prevailed below, in this case the defendant. See Commonwealth v. Smith, 281 Va. 582, 588, 709 S.E.2d 139, 141 (2011); Commonwealth v. Peterson, 15 Va. App. 486, 487, 424 S.E.2d 722, 723 (1992). This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*).

asked about the defendant's criminal history, and learned that he had a history of violent crime.[2] According to Sawatzke, once he learned of the defendant's criminal history, it highlighted his concern that the defendant had not immediately stopped his vehicle when directed to do so. However, the officer was not able to articulate any more specific concern or suspicion of criminal activity. He also admitted that the location where he initially activated his emergency lights was dark and the gas station where the defendant stopped was well lit.

Officer Sawatzke and the Portsmouth K-9 officer went over to the defendant's van. The defendant got out of the vehicle without being told to do so. Consistent with police department policy, the K-9 officer explained what he was going to do with the dog. The defendant "became agitated" and asked why they "were doing all this." Sawatzke patted him down for weapons. Another police officer asked the defendant about "his intoxication level." Officer Sawatzke then attempted to explain the summons to the defendant. During this conversation, the dog conducted the open-air sniff around the van. The dog "alerted to" the van, and at that point the defendant was independently "detained" for a different suspected crime.[3] The police searched the van and found a .38 caliber revolver.

In the defendant's motion to suppress the evidence found in the van, he argued that the detention to conduct the dog sniff violated his rights under the Fourth Amendment by extending the duration of the traffic stop in contravention of the decision of the Supreme Court of the United States in Rodriguez v. United States, 135 S. Ct. 1609 (2015). The prosecutor noted that Rodriguez provides that "the authority for [the] seizure ends when tasks tied to the traffic

---

[2] The Portsmouth police had information in their database that was not available to Chesapeake. Officer Sawatzke testified that it is important for officer safety to know as much as possible about the subject of a traffic stop, including any history of violence.

[3] The video from the officer's body camera was admitted into evidence and provided precise times associated with different aspects of the encounter. The officer narrated and answered questions in association with the footage.

infraction are or reasonably should have been completed" and argued that Officer Sawatzke addressed the traffic stop the entire time. The circuit court granted the motion to suppress.

## II. ANALYSIS

The Commonwealth challenges the circuit court's ruling granting the defendant's motion to suppress the evidence. It argues that the court erred by granting the motion based on a lack of evidence concerning the training and reliability of the police dog because that was not an issue litigated by the parties. Alternatively, the Commonwealth argues that the police use of the K-9 did not extend the detention beyond the permissible purposes of the traffic stop.

### A. Basis for Circuit Court Order

The Commonwealth argues that the court based its ruling on an issue that was not properly before it. The Attorney General suggests that the circuit court did not rule on the Rodriguez issue that was raised in the defendant's motion and argued by the parties. We disagree.

In the motion to suppress, the defendant argued that the dog sniff was part of a separate investigation from the traffic stop and was conducted in a manner that extended the stop without a reasonable, articulable suspicion of an independent crime. He relied on the video to support his argument that the extended stop and K-9 open-air sniff violated the mandates of Rodriguez. The defendant suggested that once Officer Sawatzke finished writing the summons, he was required to proceed directly to the defendant and issue it. Instead, Sawatzke approached the Portsmouth officers and asked for the K-9. Defense counsel also suggested that any safety concerns based on the defendant's criminal history were not related to the traffic stop.

The prosecutor countered that the circuit court was required to conduct a "reasonableness analysis of the traffic stop" to determine whether the request for the K-9 and the execution of the open-air sniff fell outside the tasks associated with the traffic stop. The prosecutor suggested

that during the entire time, Officer Sawatzke was engaged in activities associated with the traffic stop and processing the summons for the offense. He pointed out that a police dog was already present as the summons was being processed and Sawatzke took less than a minute to speak with the other officers about the additional criminal information and the request for the dog sniff. Relying in part on the video from the officer's body camera, the prosecutor recounted the events that followed, including the various brief discussions with the defendant as the K-9 circled the van. The prosecutor suggested based on the video that there was no point in time during which Officer Sawatzke was not "addressing the traffic stop." He argued that the stop was not extended by the officer's questions or actions and thus did not violate Rodriguez. The prosecutor asserted that Matthews v. Commonwealth, 65 Va. App. 334, 778 S.E.2d 122 (2015), was not controlling because in that case, the police officer asked questions unrelated to the purpose of the stop.

It is safe to say that based on this record, the Rodriguez challenge was squarely before the circuit court. At that point, after hearing argument, the court took a recess to review the Rodriguez opinion. Upon reconvening, it noted that the Supreme Court held in Rodriguez that the driver's Fourth Amendment rights were violated when the traffic stop was extended in order for law enforcement to conduct a "dog search." The court also discussed K-9 alerts *in general*, stating in part, "[T]he fact that the dog[] alerted could be used as a way to justify a search when there was, in fact, no alert, and I don't want to suggest that that occurred [here], but the issue certainly arises that it could be used as a ploy by overzealous law enforcement officers." The court further observed that "the Supreme Court has ruled on this exact issue," but the court opined that it "[did not] think that's the case at all [here]." Ultimately, the court ruled, "I find [the defendant's] motion is well-founded, and I am going to sustain his motion . . . to suppress."

The Commonwealth filed a motion to reconsider the ruling. In its motion, the Commonwealth noted that the motion to suppress the evidence was based entirely on application of Rodriguez and the contention that the traffic stop was unreasonably extended to allow for a K-9 open-air sniff of the van. The prosecutor referenced the related testimony of Officer Sawatzke and the Portsmouth K-9 officer. He specifically suggested that "the Commonwealth understood the [c]ourt to [have found] that the officers [did] not act[] improperly in this investigation" and did "not unreasonably extend[] the encounter to perform a K9 sniff" in contravention of Rodriguez. According to the prosecutor, the circuit court's comments on the record made clear that it "rul[ed] that the search was illegal because, based on the K9 alert, officers would presumably be looking for narcotics[] but no narcotics were located." Ultimately, the prosecutor asked for the opportunity to provide evidence regarding the training, experience, and reliability of the narcotics detection dog because "the [c]ourt ha[d] raised the issue." In a proposed order, the Commonwealth also requested, among other things, that if the court denied the motion for an additional hearing, it enter a written order reflecting its ruling from the suppression hearing.

The court did not conduct an additional hearing but entered the Commonwealth's proposed order on August 10, 2017. Shortly thereafter, it entered an additional order, stating only, "After hearing evidence and argument of counsel, the [c]ourt granted the defendant's motion to suppress on all grounds, for the reasons stated on the record."

We do not interpret the circuit court's ruling in the manner suggested by the Commonwealth. Rather, the circuit court's ruling was based on the only issue presented in the motion to suppress and litigated by the parties—whether the police officer impermissibly extended the traffic stop in violation of the defendant's Fourth Amendment rights pursuant to Rodriguez. See generally Grinton v. Commonwealth, 14 Va. App. 846, 850, 419 S.E.2d 860,

- 6 -

862 (1992) (rejecting the parties' shared interpretation of the trial court's bench ruling). The Rodriguez issue was squarely before the court. The circuit court took a recess in order to review the opinion. The judge explained that the defendant's motion to suppress, which was based on Rodriguez, was "well-founded" and granted the motion. If the judge's initial explanation left any question regarding the basis for the ruling, that basis was further clarified by what followed. The prosecutor filed a motion to reconsider asking for the opportunity to present evidence on the factual question of the dog's training and reliability. The circuit court declined to hear additional evidence on that point, and instead it reiterated that the motion was granted for the reasons stated on the record. It is entirely possible that in addition to granting the motion to suppress, which focused on the Rodriguez analysis, the court was also concerned about the training and qualifications of the police dog. However, any such concern does not undercut the fact that it ruled on the motion, evidence, and argument before it. The record reflects that the circuit court granted the motion on the basis presented by the defendant in that motion, concluding that the investigating police officer unconstitutionally extended the traffic stop in order to conduct the dog sniff.

## B. Extension of Traffic Stop

The Commonwealth alternatively challenges the circuit court's ruling granting the defendant's motion to suppress based on violation of the tenets established in Rodriguez. Specifically, the Commonwealth suggests that the traffic stop was not impermissibly extended under the Fourth Amendment and that Officer Sawatzke continuously pursued the purpose of the traffic stop simultaneously with the dog sniff.[4]

---

[4] The Commonwealth's assignments of error also encompass the trial court's application of the exclusionary rule. However, the Commonwealth does not address the issue in the argument portion of its brief, thus abandoning the point. See Rule 5A:20(e).

On appeal of an order granting a defendant's motion to suppress, the Commonwealth has the burden to show that the ruling constituted reversible error. See Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002). Whether a warrantless seizure violated the Fourth Amendment presents a mixed question of law and fact. Jones v. Commonwealth, 279 Va. 521, 527, 690 S.E.2d 95, 99 (2010). The appellate court is bound by the circuit court's findings of fact unless "plainly wrong or without evidence to support them." Gregory v. Commonwealth, 64 Va. App. 87, 93, 764 S.E.2d 732, 735 (2014) (citing Code § 8.01-680). Further, we "give due weight to the inferences drawn from those facts" by the trial judge and law enforcement. McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*). However, we review the circuit court's application of the law *de novo*. Commonwealth v. Quarles, 283 Va. 214, 220, 720 S.E.2d 84, 87 (2012); Brooks v. Commonwealth, 282 Va. 90, 94-95, 712 S.E.2d 464, 466 (2011).

"[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns," which certainly may include officer safety issues. Rodriguez, 135 S. Ct. at 1614, 1616 (citations omitted). "An officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop," but "he may not do so in a way that prolongs the stop, absent the [independent] reasonable suspicion ordinarily demanded to justify detaining an individual." Id. at 1615; see also United States v. Hill, 852 F.3d 377, 381-82 (4th Cir. 2017) ("[A]n officer need not employ 'the least intrusive means conceivable' in executing a stop, but he still must be reasonably diligent and must use 'the least intrusive means reasonably available.'" (quoting United States v. Palmer, 820 F.3d 640, 649 (4th Cir. 2016))). This Court, interpreting Rodriguez, has concluded that, "the Supreme Court specifically rejected" the concept that "a *de minimis*" delay or extension of a stop did not violate a citizen's constitutional rights. Matthews, 65 Va. App. at 345, 778 S.E.2d at

- 8 -

128. "The critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket, . . . but whether conducting the sniff 'prolongs'—*i.e.*, adds time to—'the stop.'" Rodriguez, 135 S. Ct. at 1615; see also Hill, 852 F.3d at 382 (holding that a dog sniff is permitted during a traffic stop unless it "prolong[s] the duration of the traffic stop" without "consent of those detained or [independent] reasonable suspicion of criminal activity").

Contrary to the appellee's suggestion at oral argument, a police officer's "safety interest stems from the mission of the stop itself." Rodriguez, 135 S. Ct. at 1616. Consequently, "an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." Id.; see also Arizona v. Johnson, 555 U.S. 323, 331 (2009) ("[T]he risk of a violent encounter in a traffic-stop setting 'stems not from the ordinary reaction of a motorist stopped . . . , but from the fact that evidence of a more serious crime might be uncovered during the stop.'" (quoting Maryland v. Wilson, 519 U.S. 408, 414 (1996))); Kidd v. Commonwealth, 38 Va. App. 433, 444, 565 S.E.2d 337, 342 (2002) (noting that during a lawful detention, a law enforcement officer "is 'authorized to take such steps as [are] reasonably necessary to protect [his and others'] personal safety'" (alterations in original) (quoting Welshman v. Commonwealth, 28 Va. App. 20, 34, 502 S.E.2d 122, 128-29 (1998) (*en banc*))). Rodriguez does not alter this important point. 135 S. Ct. at 1614.

Here, the key question under Rodriguez is whether the evidence, viewed in the light most favorable to the defendant, as the prevailing party below, establishes that the traffic stop was prolonged in any way in order to conduct the dog sniff, which is not something that is part-and-parcel to the traffic stop itself. See Matthews, 65 Va. App. at 345, 778 S.E.2d at 128. The defendant does not dispute that the stop and seizure for defective license plate lights was lawful. He challenges only what took place after the officer completed the summons.

The facts relating to the summons and the processing of it are critical to the analysis. Officer Sawatzke went back to his police car and entered the information provided by the defendant into his computer in order to check the defendant's driving status. He learned that the defendant's license was suspended and he had two previous convictions for driving on a suspended license. There were no outstanding warrants for the defendant's arrest. Based on this information, Sawatzke remained in his police car and began completing a summons. Another police officer informed Sawatzke that officers from Portsmouth had arrived, including a K-9 unit, and that these officers had more information about the defendant's criminal history, including a carjacking.

While continuing to process the summons, Officer Sawatzke decided to have the K-9 officer run his dog around the van. Nevertheless, he did not request that the officer do so while he was completing the summons.[5] It was only after the summons was completed that Sawatzke "walked back to the K-9 officer and requested the open-air sniff," instead of proceeding to the van to issue the ticket. While he was with other officers, they provided Sawatzke with additional information they had about the defendant, which included that he had a history of violent crime.

Manifestly, Sawatzke's decision to confer briefly with the other police officers to learn more about the defendant's criminal history before reapproaching him was in accordance with maintaining officer safety during the stop. See Commonwealth v. Smith, 281 Va. 582, 591, 709 S.E.2d 139, 143 (2011) (holding that a police officer's knowledge during a traffic stop of the driver's prior criminal history was relevant to "determining whether the officer had reasonable suspicion to conduct a pat down for his or her safety"). The Rodriguez concern does not arise in this case as a result of the additional inquiry regarding the defendant's criminal history but, instead, from the timing of the request for the police dog and its use in the context of the facts of this case.

---

[5] It took about nine minutes to compile the necessary information for the summons.

- 10 -

When Officer Sawatzke and the K-9 officer went over to the defendant's van, the defendant got out of the vehicle. But Sawatzke did not proceed to issue the summons. Instead, the K-9 officer explained what he was going to do with the dog, which lasted seven seconds. Officer Sawatzke then patted the defendant down for weapons. The defendant stated that he "didn't do nothing." In response, Sawatzke explained:

> [The officer is] just going to walk around with the dog. This is your third offense driving on a suspended license . . . . I tried to stop you a mile down the road and you came down all the way down here before you stopped. There was like four or five roads right there you could have stopped at.

The defendant then initiated a discussion about why he was stopped. During this conversation, the dog alerted on the van and at that point the defendant was "detained" for a separate suspected offense. All of these events occurred before Officer Sawatzke finished processing the summons and obtained the defendant's signature on it as required by statute. See Code § 46.2-945.[6]

The facts in the record, viewed in the light most favorable to the defendant, support the circuit court's finding that the police K-9 investigation extended the stop, however briefly.[7] See

---

[6] At the time of the offense, the Code required the motorist's "written promise" to comply with the citation. See 1989 Va. Acts ch. 727. A subsequent statutory amendment is not applicable to this case. See 2017 Va. Acts ch. 164 (amending the statute without specifying an effective date); Code § 1-214 (providing that the default effective date of an amendment is "the first day of July" following the legislative session).

[7] In granting the motion to suppress, the circuit court implicitly found that Officer Sawatzke impermissibly extended the traffic stop in order to run the dog around the van, presumably to investigate an unrelated matter. See, e.g., Groves v. Commonwealth, 50 Va. App. 57, 61-65, 646 S.E.2d 28, 30 (2007) (noting that a "judge is presumed to know the law and to apply it correctly in each case" (quoting Crest v. Commonwealth, 40 Va. App. 165, 172 n.3, 578 S.E.2d 88, 91 n.3 (2003))). See generally Henderson v. Commonwealth, 285 Va. 318, 326, 736 S.E.2d 901, 905 (2013) (inferring a circuit court finding based on its ruling); Vinson v. Commonwealth, 258 Va. 459, 467, 522 S.E.2d 170, 175 (1999) (recognizing a circuit court's holding that was implied by its ruling). There is no suggestion in the record of bad faith on the part of the officers. However, a well-intentioned officer may still unlawfully extend a traffic stop in violation of Rodriguez. See generally Matthews, 65 Va. App. at 353, 778 S.E.2d at 132 (holding that the "officers acted in good faith" in unconstitutionally delaying the completion of a pre-Rodriguez traffic stop).

- 11 -

United States v. Cornejo, 196 F. Supp. 3d 1137, 1152 (E. D. Cal. 2016) (holding that the traffic stop became unlawful after one police officer "retained" the completed "citation . . . for another minute-and-a-half while he waited for" a second officer "to finish walking his dog around the car"); People v. Pulling, 34 N.E.3d 1198, 1201 (Ill. App. Ct. 2015) (holding that the police officer "unlawfully prolonged the duration of the stop when he interrupted his traffic citation preparation to conduct a free-air sniff based on an unparticularized suspicion of criminal activity"). Sawatzke waited until after he wrote the summons to ask the K-9 officer to conduct the open-air dog sniff. When Sawatzke and the other officer approached the defendant with the summons and the dog, rather than handing him the completed summons and obtaining his signature, they informed him that the dog would do an open-air sniff around his car and explained the procedure. This interaction was not in furtherance of the purposes of the traffic stop or the accompanying concern of officer safety. Consequently, "conducting the sniff . . . add[ed] time" to the stop.[8] See Rodriguez, 135 S. Ct. at 1616; see also Matthews, 65 Va. App. at 345, 778 S.E.2d at 128 (rejecting the theory that a *de minimus* delay in order to pursue an investigation unrelated to the traffic stop is constitutional).

Thus, the circuit court did not err by granting the motion to suppress.

### III.  CONCLUSION

We hold that the record, viewed under the appropriate legal standard, supports the circuit court's conclusion that the police officer briefly extended the traffic stop in a manner that violated the defendant's Fourth Amendment rights. Consequently, we affirm the circuit court's ruling

---

[8] Notably and correctly, the Commonwealth does not suggest in its brief that an independent reasonable suspicion of criminal activity supported any extension of the traffic stop. See generally Sidney v. Commonwealth, 280 Va. 517, 524, 702 S.E.2d 124, 128-29 (2010) ("[I]f there are articulable facts supporting a reasonable suspicion" of criminal activity," that person may be detained "briefly while attempting to obtain additional information." (quoting Hayes v. Florida, 470 U.S. 811, 816 (1985))).

suppressing the challenged evidence, and we remand the case for further proceedings consistent with this opinion.

Affirmed and remanded.