# *VIRGINIA:*

*In the Court of Appeals of Virginia on*   **Tuesday**   *the*  **18th**  *day of*  **April, 2023**.

Arun Rashid Turay,                                                                                    Appellant,

 against             Record No. 0868-21-3
                      Circuit Court Nos. CR20000396-00 through CR20000398-00 and
                      CR20000400-00

Commonwealth of Virginia,                                                          Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On April 3, 2023 came the appellee, by the Attorney General of Virginia, and filed a petition requesting that the Court set aside the judgment rendered herein on March 21, 2023, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the petition for rehearing *en banc* is granted and the appeal of those issues is reinstated on the docket of this Court.  The mandate previously entered herein is stayed pending the decision of the Court *en banc*.

The parties shall file briefs in compliance with the schedule set forth in Rule 5A:35(b).  The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter.  An electronic version of each brief shall be filed with the Court and served on opposing counsel.[1]

A Copy,
        Teste:

A. John Vollino, Clerk

                                  *original order signed by a deputy clerk of the*
                     By:   *Court of Appeals of Virginia at the direction*
                                  *of the Court*
                                  Deputy Clerk

---

[1]  The guidelines for filing electronic briefs and appendices can be found at www.courts.state.va.us/online/vaces/resources/guidelines.pdf.

Present:   Judges Chaney, Callins and Senior Judge Petty
Argued by videoconference


ARUN RASHID TURAY

MEMORANDUM OPINION* BY
v.        Record No. 0868-21-3          JUDGE VERNIDA R. CHANEY
MARCH 21, 2023

COMMONWEALTH OF VIRGINIA


UPON A REHEARING


FROM THE CIRCUIT COURT OF THE CITY OF WAYNESBORO
Paul A. Dryer, Judge

Jessica N. Sherman-Stoltz (Sherman-Stoltz Law Group, PLLC, on
briefs), for appellant.

Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
Attorney General, on briefs), for appellee.


Arun Rashid Turay (Turay) entered conditional guilty pleas in the Circuit Court for the City

of Waynesboro (circuit court) and appealed the circuit court's denial of his motion to suppress

evidence.[1]  Turay contends on appeal that the circuit court erred in finding that the police had

reasonable, articulable suspicion to detain him and, therefore, erred in denying his motion to

---

* This opinion is not designated for publication.  *See* Code § 17.1-413.

[1] Pursuant to Code § 19.2-254, Turay's entry of conditional guilty pleas reserved his right to
appellate review of the circuit court's adverse determination of his suppression motion.  Based on
his conditional guilty pleas, Turay was convicted of armed burglary in violation of Code § 18.2-90,
robbery in violation of Code § 18.2-58, use of a firearm in commission of robbery in violation of
Code § 18.2-53.1, and possession or transportation of a firearm after having been convicted of a
violent felony in violation of Code § 18.2-308.2.

suppress the fruits of his unconstitutional seizure.[2]  A divided panel of this Court issued a decision on October 18, 2022, affirming the circuit court's judgment denying Turay's suppression motion. Turay timely petitioned the panel to reconsider its decision.  The panel granted Turay's petition for rehearing, withdrew the panel's original opinion, and vacated the mandate by order dated November 22, 2022.  After rehearing, this Court agrees with Turay and reverses the circuit court's judgment denying his motion to suppress.

## BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party" in the circuit court.  *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).  This Court "regard[s] as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence."  *Id.* (citing *Gerald*, 295 Va. at 473).

On February 17, 2020, late in the evening, Deputy Sheriff Stroop of Augusta County responded to a radio call regarding a robbery in Waynesboro.  When Deputy Stroop drove by the crime scene in Waynesboro, an officer on the roadway told him "there [were] people inside the house that weren't supposed to be there, a firearm was taken, and then they fled on foot."  Although unfamiliar with the area, Deputy Stroop decided to drive around to look for the suspects.

While Deputy Stroop was driving, he heard Sergeant Lemons announce on the radio a "be on the lookout" (BOLO) for "three Black males, all armed" and "wearing black sweatshirts." Around 11:30 p.m., about thirty minutes after the robbery, Deputy Stroop stopped and detained two

---

[2] Turay's co-defendant, Justice Ahmad Carr, filed a separate appeal to this Court challenging the denial of his motion to suppress, which was heard in the circuit court in a joint evidentiary hearing with Turay's suppression motion.  *See Carr v. Commonwealth*, No. 1136-21-3 (Va. Ct. App. Oct. 18, 2022) (vacating convictions where defendant was unlawfully seized without reasonable, articulable suspicion of criminal activity and the trial court erred in failing to suppress evidence obtained pursuant to the unconstitutional seizure).

Black men who "were walking down the road." The two men seized by the deputy were Turay and his co-defendant, Justice Ahmad Carr (Carr). The location of the seizure was approximately six to ten blocks from the scene of the robbery, although Deputy Stroop testified that he did not recall how far he was from the crime scene when he stopped Turay and Carr. Deputy Stroop testified that at the time of the seizure, there were not many people out on the street where Turay and Carr were walking. Deputy Stroop also testified that Turay and Carr were not doing anything but walking down the road in a residential neighborhood.

Deputy Stroop testified that he seized Turay and Carr after he concluded "[t]hey matched the description of what was given out" over the radio. According to Sergeant Lemons's police report and testimony, neither Turay's nor Carr's clothing matched the suspects' clothing description that Sergeant Lemons gave in the BOLO.[3] Sergeant Lemons testified that Turay was wearing a black hooded jacket with a red stripe down the arm. Officer Mawyer, a patrol officer who responded to the BOLO, also testified that Turay "was wearing a black jacket with a distinct red stripe . . . down the sleeves" and Carr was wearing gray pants and a white hoodie. The police

---

[3] Sergeant Lemons's testimony:

> Q:  And then you arrived, and you immediately saw that they
> weren't wearing what was described, or what you knew personally
> from the — from the cell phone footage; right?
>
> A:  Correct. . . . *[T]he clothing didn't match; that's correct.*
>
>    . . . .
>
> Q:  Do you recall, in your report, that . . . You indicated in your
> report that at the time of arrival that the first thing you noticed was
> that neither of the males' clothing description matched what you
> had said over the radio?
>
> A:  I do recall that; yes, ma'am.

(Emphasis added).

bodycam video shows Carr wearing light gray pants, a long-sleeved white top with a multi-colored print and lettering on the front, a white or light-colored cap with a dark brim, turned backward, and a backpack with a floral design. The police bodycam video shows Turay wearing black pants and a long-sleeved black top with a wide red stripe down each sleeve and a wider blue stripe on each side of the garment.

Deputy Stroop held Turay and Carr at gunpoint and directed them to place their hands on the hood of his police car. Moments later, after Deputy Stroop notified Waynesboro police, Officers Cacciapaglia and Mawyer from Waynesboro arrived separately at Deputy Stroop's location to determine whether he had detained the right people.

Upon Officer Mawyer's arrival at the detention site, Sergeant Lemons provided a more detailed description of the suspects' clothing, including information obtained after the BOLO. After hearing this additional information, the Waynesboro patrol officers handcuffed and searched Turay and Carr. Neither Turay nor Carr possessed any weapons. But Carr possessed credit cards belonging to one of the victims, and Turay had a bookbag that contained a victim's keys in addition to bloody clothes and shoes that looked the same as items seen on the video of the robbery. A DNA comparison showed that the blood on the clothes matched one of the victims.

Turay filed a suppression motion in the circuit court alleging that his detention by Deputy Stroop was an unconstitutional seizure because it was not supported by reasonable, articulable suspicion that Turay was involved in the robbery. Carr also filed a suppression motion alleging that he was unconstitutionally stopped and detained without reasonable, articulable suspicion. After a joint hearing on both defendants' suppression motions, the circuit court denied both motions for the reasons stated in its letter opinion dated March 24, 2021 (March 2021 letter opinion).

In the March 2021 letter opinion, the circuit court made the following factual findings:

- The first BOLO description radioed by Sergeant Lemons described the suspects as "three Black males wearing black."

- Although Sergeant Lemons radioed more detailed descriptions of the suspects' clothing after the initial BOLO, "Deputy Stroop would have only heard the first description prior to detaining the Defendants."

- When Sergeant Lemons arrived at the location where Turay and Carr were detained, "he noticed that their clothing did not match precisely the descriptions that he previously gave over his police radio."

- "Carr's clothing was not black," but "Turay's clothing was black, matching the description heard by Deputy Stroop."

- "Neither [Carr nor Turay] was wearing black sweatpants with a red stripe."

- "[T]he Defendants at the time [Deputy] Stroop encountered them, matched the description in sex, race, and some of the clothing."

- "[T]here were no other people out in the neighborhood during this time" when Deputy Stroop observed Turay and Carr walking down the street late in the evening.

- "[T]he Defendants were the only two people Deputy Stroop encountered walking in the residential neighborhood, at 11:30 p.m., a relative short distance from the crime scene within thirty minutes of the crime."

The circuit court also found that, taken together, the factors of proximity, time, physical description, gender, and racial description "gave Deputy Stroop, an objective, reasonable suspicion that the Defendants may have been involved in the crime that occurred a few blocks away and a few minutes before his encounter with them." Thus, the circuit court found that Deputy Stroop had reasonable, articulable suspicion to stop and detain Turay and Carr. Based on these findings, the circuit court held that "the stop and detention of the Defendants by Deputy Stroop was not in violation of the Fourth Amendment." Accordingly, the circuit court denied both defendants' suppression motions. This appeal followed.

ANALYSIS

A. Standard of Review

On appeal of the denial of a motion to suppress evidence, this Court "determine[s] whether the accused has met his burden to show that the trial court's ruling, when the evidence is viewed in the light most favorable to the Commonwealth, was reversible error." *Merid v.*

*Commonwealth*, 72 Va. App. 104, 108 (2020) (quoting *Cantrell v. Commonwealth*, 65 Va. App. 53, 56 (2015)), *aff'd*, 300 Va. 77 (2021), *cert. denied sub nom. Merid v. Virginia*, 142 S. Ct. 1137 (2022). Turay's "claim that [he] was seized in violation of the Fourth Amendment presents a mixed question of law and fact . . . ." *Id.* at 108-09 (quoting *King v. Commonwealth*, 49 Va. App. 717, 721 (2007)). This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at 109 (quoting *Cantrell*, 65 Va. App. at 56). "However, we consider *de novo* whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment." *Id.* (quoting *Cantrell*, 65 Va. App. at 56); *see also Moreno v. Commonwealth*, 73 Va. App. 267, 274 (2021) ("[We] review[ ] *de novo* the overarching question of whether a search or seizure violated the Fourth Amendment." (quoting *Williams v. Commonwealth*, 71 Va. App. 462, 475 (2020))).

### B. Motion to Suppress the Fruits of the Unconstitutional Seizure

Turay argues on appeal that the circuit court erred in denying his motion to suppress because Deputy Stroop unreasonably seized him without a warrant and without reasonable, articulable suspicion that he was engaged in criminal activity. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "If a police officer has reasonable, articulable suspicion that a person is engaging in, or is about to engage in, criminal activity, the officer may detain the suspect to conduct a brief investigation without violating the person's Fourth Amendment protection against unreasonable searches and seizures." *Long v. Commonwealth*, 72 Va. App. 700, 712 (2021) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 202 (1997) (en banc)). "A reasonable, articulable suspicion is 'a particularized and objective basis for suspecting the person

- 6 -

stopped of criminal activity.'" *Id.* (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). To determine whether a police seizure is reasonable under the Fourth Amendment, this Court considers the totality of the particular circumstances at the time of the seizure. *See Harmon v. Commonwealth*, 15 Va. App. 440, 445 (1992).

We hold that Deputy Stroop's detention of Turay violated his Fourth Amendment right against unreasonable seizures because, at the time of the seizure, there was no particularized, objective basis for suspecting Turay of criminal activity. There is no evidence that Deputy Stroop observed Turay or Carr do anything suspicious or evasive. Deputy Stroop detained Turay and Carr when they were merely walking—not rushing—down the street at night in a residential neighborhood. There is no evidence that they were walking away from, rather than toward, the scene of the robbery. The mere observation of two Black men walking late at night in a residential neighborhood cannot give rise to reasonable, individualized suspicion that they were involved in a robbery that occurred six to ten blocks away thirty minutes earlier. *See McCain v. Commonwealth*, 275 Va. 546, 552 (2008) ("The character of the location and the time at which a person is observed are relevant factors, but they do not supply a particularized and objective basis for suspecting criminal activity on the part of the particular person stopped." (citing *Brown v. Texas*, 443 U.S. 47, 51-52 (1979); *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000))). And the circuit court's finding that "there were no other people out in the neighborhood" when Turay and Carr were walking down the street is not a reasonable inference from the only evidence on that issue—that there were not a lot of people out on the street at that time. Although this Court defers to the circuit court's factual findings, we reject unreasonable inferences that are not supported by the evidence. *See Potts v. Commonwealth*, 12 Va. App. 1093, 1099 (1991).

Deputy Stroop testified that he detained Turay and Carr only because he thought they matched the description of the suspects in the BOLO. Yet the BOLO only included a vague

- 7 -

description of clothing and did not include a description of any suspect's height, weight, build, hair style, facial characteristics, age, or any other distinguishing physical features apart from the general classifications of race (Black) and gender (male).

In fact, the record shows that Turay and Carr did not match the extremely vague BOLO description of three armed Black males wearing black sweatshirts. First, as Sergeant Lemons testified and recorded in his police report, the first thing he noticed when he saw Turay and Carr was that neither Turay's nor Carr's clothing matched the suspects' clothing description in the BOLO.[4] Carr was not wearing black at all, but was wearing a white top and light gray pants. Turay was wearing a black jacket or black sweatshirt with distinctive red stripes down the sleeves and a wider blue stripe on each side. Second, there were only two men, not three. Third, nothing in the record supports an inference that either Turay or Carr appeared to be armed; in fact, neither was armed.

Considering the facts available to Deputy Stroop at the time of the seizure, as we must, Deputy Stroop's observations of Turay did not provide a particularized, objective basis for suspecting Turay's involvement in the robbery or any other criminal activity. *See Terry v. Ohio*,

---

[4] According to the dissent, even if Turay and Carr's clothing did not match the BOLO description of the suspects' clothing, Deputy Stroop reasonably stopped them based on his honest belief that their clothing matched the BOLO description. The dissent concludes that the deputy's honest mistake of fact does not warrant the suppression of evidence. However, as the Supreme Court recognized in *Terry*, "[i]f subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." *Terry v. Ohio*, 392 U.S. 1, 22 (1968) (quoting *Beck v. Ohio*, 379 U.S. 89, 97 (1964)).

Although the suppression of evidence is not warranted when the justification for a seizure includes an officer's *reasonable* mistake of fact, the record does not support a finding that Deputy Stroop reasonably mistook Turay and his companion, Carr—who was wearing a long-sleeved white top—for two Black males wearing black sweatshirts. *Cf. Heien v. North Carolina*, 574 U.S. 54, 57 (2014) (Under the Fourth Amendment, "a search or seizure may be permissible even though the justification for the action includes a reasonable factual mistake."); *Collins v. Commonwealth*, 297 Va. 207, 218 (2019) (holding that suppression is not a proper remedy for a Fourth Amendment violation where the police acted with an objectively reasonable, good faith belief that the search and seizure were constitutional).

392 U.S. 1, 21-22 (1968) (establishing that the court should consider "the facts available to the officer at the moment of the seizure"). Deputy Stroop expressly testified that he stopped Turay and Carr because he thought they matched the BOLO description. But even if Turay had been wearing a garment that could be accurately described as a "black sweatshirt," as described in the BOLO, wearing such a non-distinctive garment—without more—does not support a finding of particularized reasonable suspicion of criminal activity. "In the absence of other circumstances that provide sufficient particularity, a generalized description applicable to large numbers of people contradicts the Fourth Amendment's jurisprudence demanding specificity and will not suffice to justify the seizure of any individual." *Armstrong v. United States*, 164 A.3d 102, 108 (D.C. 2017) (citations omitted) (holding that the lookout description was insufficiently particularized where the description consisted of "a white car, possibly a Mercury Sable, with tinted windows and two Black males"); s*ee also United States v. Brown*, 448 F.3d 239, 247 (3d Cir. 2006) (holding that the police radio broadcast of a description of two Black male robbery suspects "fail[ed] to satisfy the Fourth Amendment's 'demand for specificity'" (quoting *Terry*, 392 U.S. at 21 n.18)). Here, the BOLO description of three Black males wearing black sweatshirts lacks the particularized specificity necessary to warrant the seizure of any person. *See Terry*, 392 U.S. at 21 n.18 ("This demand for specificity in the information upon which police action is predicated is the central teaching of [the United States Supreme] Court's Fourth Amendment jurisprudence.").

Because there was no particularized, objective basis for suspecting that Turay was engaged in criminal activity, Deputy Stroop's seizure of Turay was without reasonable, articulable suspicion that Turay was involved in the robbery. Therefore, because Turay was seized in violation of his Fourth Amendment right against unreasonable seizures, we conclude that the circuit court erred in denying Turay's motion to suppress the fruits of the officers' Fourth Amendment violation. S*ee*

*Terry*, 392 U.S. at 15 (holding that an unreasonable search or seizure by police "must be condemned by the judiciary and its fruits must be excluded from evidence in criminal trials"); *see also Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

## CONCLUSION

The warrantless seizure of Turay violated the Fourth Amendment because, at the time of the seizure, the police lacked particularized reasonable, articulable suspicion that Turay was engaged in criminal activity. Therefore, this Court holds that the circuit court erred in denying Turay's motion to suppress the fruits of the unconstitutional seizure. Accordingly, this Court reverses the circuit court's decision denying the motion to suppress, vacates Turay's convictions, and remands to the circuit court for further proceedings not inconsistent with this opinion, allowing Turay to withdraw his guilty pleas pursuant to Code § 19.2-254.

*Reversed and remanded.*

Petty, S.J., dissenting.

Last October we issued an opinion affirming the trial court's denial of Turay's motion to suppress. *Turay v. Commonwealth*, No. 0868-21-3 (Va. Ct. App. Oct. 18, 2022) (*Turay I*). Despite there being no change to either the facts or the law since that opinion, a majority of the panel granted Turay's petition for rehearing and has now reversed course. I continue to believe that the panel was correct in its initial decision, and I have seen nothing that would change the outcome. Therefore, for the reasons set out in the majority opinion in *Turay I* as well as those reasons I expressed in my dissent to the companion case of *Carr v. Commonwealth*, No. 1136-21-3 (Va. Ct. App. Oct. 18, 2022), I respectfully dissent.